**UNITED STATES of America**

**v.**

**Jean D. DOCKERY, Appellant.**

**No. 23730.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 14, 1970.

Decided May 25, 1971.

Petition for Rehearing Denied
July 9, 1971.

Certiorari Denied Nov. 9, 1971.
See 92 S.Ct. 299.

J. Skelly Wright, Circuit Judge, dissented and filed opinion.

Mr. Sheldon I. Cohen, Washington, D. C. (appointed by this court) for appellant.

Mr. Broughton M. Earnest, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., John A. Terry, and James A. Treanor, III, Asst. U. S. Attys., were on the brief, for appellee.

Before WRIGHT, MacKINNON and WILKEY, Circuit Judges.

PER CURIAM:

We here decide, consistently with the great weight of authority, that it was not a denial of due process of law for the trial judge in sentencing to rely upon the presentence investigative report without disclosing its entire contents to appellant. The longstanding and uniform understanding of the requirements of due process makes the contrary argument one "more properly to be made to the Supreme Court," Castle v. United States, 120 U.S.App.D.C. 398, 401, 347 F.2d 492, 495 (1964), cert. denied, 381 U.S. 929, 85 S.Ct. 1568, 14 L.Ed.2d 687 (1965), and to the rule-making authority.

I

Jean D. Dockery was indicted for escaping from custody in violation of 18 U.S.C. § 751(a).[1] She had escaped on March 8, 1968 but the warrant for her arrest was not executed until 11 months later on April 1, 1969, when she was apprehended. On June 6, 1969 she was arraigned without counsel, a plea of not guilty was entered and she stated that she would retain counsel. However, on July 18, 1969 her present counsel was appointed to represent her. On August 1, 1969, appellant made an oral motion that she be committed to St. Elizabeths Hospital for a period not to exceed 60 days to determine whether the offenses with which she was charged[2] were the product of her mental condition and whether she was then mentally competent to stand trial.

On August 29, 1969, the acting superintendent of the National Institute of Mental Health, St. Elizabeths Hospital, reported that appellant was "competent to stand trial" but was suffering from "drug dependence, heroin * * * cocaine"; that the alleged offense of sale of narcotic drugs, with which she had been charged prior to her escape, was a product of her illness (drug dependence); but the alleged offense of escape from custody was not a product of that illness. On September 5, 1969, appellant gave notice of an insanity defense in accordance with D.C.Code § 24–301(j) and also moved for a bifurcated trial.

However, on September 19, 1969, she changed her plea to guilty on the escape charge and the Government stated to the court that after sentence was imposed it would move to dismiss the narcotics charge that was pending when appellant escaped. Appellant was then fully interrogated by the court to determine the factual basis for the plea, i. e., that she had escaped through a third floor win-

---

1. 18 U.S.C. § 751(a) provides:

 Whoever escapes or attempts to escape from the custody of the Attorney General or his authorized representative, or from any institution or facility in which he is confined by direction of the Attorney General, or from any custody under or by virtue of any process issued under the laws of the United States by any court, judge, or commissioner, or from the custody of an officer or employee of the United States pursuant to lawful arrest, shall, if the custody or confinement is by virtue of an arrest on a charge of felony, or conviction of any offense, be fined not more than $5,000 or imprisoned not more than five years, or both; or if the custody or confinement is for extradition or by virtue of an arrest or charge of or for a misdemeanor, and prior to conviction, be fined not more than $1,000 or imprisoned not more than one year, or both.

2. She was also charged with a narcotics offense, in addition to the escape charge.

dow of the building where she was in custody, had climbed down over two adjoining roofs, and was gone about a year (11 months and 7 days) before she was apprehended. She now objects that, when she was finally sentenced, she did not have an opportunity to see the presentence report, but at the time the court accepted her guilty plea her counsel stated: "Mrs. Dockery would not object if she was sentenced today" (which would have been without a presentence report). The court replied that it would "have to refer it to the probation officer for a full report" and denied the request.

When appellant was sentenced on October 28, 1969, the following colloquy occurred between her counsel and the court:

MR. COHEN: * * * As you know, I called your office upon finding out that you would be doing the sentencing and requested that the presentencing [sic] report be made available for my inspection or, if not, that I be at least given the opportunity to know of the contents so I would be able to answer anything in there that needed answering or refute anything in there that needed refutation.

As Your Honor knows, I was not permitted to either see the contents or know of the contents.

THE COURT: The Court will be very glad, Mr. Cohen, to go over the alleged prior record, to see whether or not there are any discrepancies with you, and with the defendant.

MR. COHEN: Your Honor, the defendant has a substantial record for petty offenses, disorderly, and various other offenses. There are some other offenses charged there which have been dropped and there is one offense which she is now serving time for and that is for possession of narcotics.

Whatever else is in the report besides a list of prior offenses I don't know and I think that too may bear discussion.

This puts me on the horns of a dilemma this morning, somewhat between Scylla and Charybdis that I risk, at the risk of asserting the defendant's rights as I view them—I risk antagonizing the same court which we are asking to exercise its discretion and be lenient in sentencing.

THE COURT: The Court is always glad to hear any mitigating circumstances that you have that would be helpful in imposing sentence. * *

As I said, I will be glad to go down the list of the offenses for which she was found guilty so that we will know whether we are talking about the same things or not.

MR. COHEN: All right, I will appreciate that.

THE COURT: I am not concerned with her juvenile record. The adult record shows receiving stolen goods in 1959 for which she was given 180 days.

In '65 it was vagrancy and disorderly; vagrancy on two counts in 1966 in which she was given $100 or sixty days on each count to run concurrently.

In '66, vagrancy and narcotics, one year, which is the one that I believe she is presently serving. Isn't that correct?

MR. COHEN: No, Your Honor.[3]

THE COURT: It is not?

MR. COHEN: There was a later sentence.[4]

THE COURT: I see. She was arrested January 21, 1969, in Baltimore for soliciting and sentenced to six months, paroled March 22, 1969,

---

3. This is not a controlling point, but the Government brief on this point states that as a result of a conviction in Baltimore, Maryland, appellant did serve time from January to March of 1969 and that the trial court was correct when it stated, at the time of sentencing on October 28, 1969, that appellant was serving time on the 1966 narcotics conviction. Service of that sentence had been delayed by an unsuccessful appeal.

4. Id.

with a detainer for return to the District of Columbia. She returned to custody April 1, 1969, remained in custody while serving the sentence imposed in the previous case. She entered a plea of guilty in the present case.

Appellant's counsel then made an extended plea in her behalf (covering 7 pages of the transcript), explained the two cases which were before the court that morning and made a very fine plea in behalf of appellant. He discussed a prior conviction of appellant for possession of narcotics in Criminal No. 1240–65 which had been appealed and affirmed, and pointed out how this meant that, if appellant were to have been convicted of the narcotics charge that was being dismissed that day, she would have faced a 10 to 40 year sentence on this second narcotics charge, with no possibility of probation, parole or suspension of sentence. Counsel argued that the threat of this substantial punishment had motivated appellant to escape, and further contended that the Government, in agreeing to dismiss the current narcotics charge when sentence was imposed on the escape charge, was admitting that they did not have the evidence to support that charge.[5] The colloquy terminated as follows:

MR. COHEN: * * * Now after having made the motion to be sentenced [without the presentence report] and that having been denied because the defendant had to await presentencing [sic] report, we are in the position of not being able to see the contents of the presentencing report other than the list of prior convictions, which we are aware of.

So for those reasons I now move that this Court either show the report to me or at least state the reasons that were given in the report to give me a chance to answer any of them, if they need answering, and move for a week's continuance so that this may be done.

I truly feel that these in camera proceedings are a denial of due process for the defendant and have no place in our jurisprudence.

THE COURT: Your motion is denied.

Thereafter the court sentenced appellant to incarceration for a period of not less than 6 months nor more than 18 months, such sentence to be consecutive to any sentence then being served in this or any other jurisdiction.[6]

The following proceedings then occurred which culminated in the court recommending narcotic treatment:

MR. COHEN: Your Honor, may I address the Court on another point?

I sent a letter to the probation officer and I don't know if you were advised of this,[7] that Mrs. Dockery felt that she still had a narcotics problem and requested that she be transferred to Lexington for treatment for her narcotics.

Again I don't know if this is one of the matters that was brought before you or if this was a matter that was considered by you.

THE COURT: I believe that Mrs. Dockery changed her mind about the Lexington situation before.[8]

What was the situation about that, Mrs. Dockery?

THE DEFENDANT: I really don't remember.

THE COURT: You don't remember?

The Court would recommend that you be given narcotic treatment at whatever institution the Attorney General selects for your incarceration.

Thereafter the narcotics charge was dismissed.

---

5. This does not necessarily follow. The Government could have considered it to be in the interests of substantial justice to make such disposition of the charges.

6. *See* note 3, *supra*.

7. The court's reply which follows indicates that the judge had been advised.

8. *Id.*

## II

On this appeal appellant contends that her rights to due process of law and to effective assistance of counsel in her defense require disclosure of the information contained in the presentence report, and that such rights were denied her when the court refused to allow her and her counsel to examine and know the contents of the presentence report utilized by the court at the time of her sentencing. The answer to this contention in the first instance is to be found in Fed.R.Crim.P. 32(c) which provides as follows:

(c) *Presentence Investigation*

(1) *When Made.* The probation service of the court shall make a presentence investigation and report to the court before the imposition of sentence or the granting of probation unless the court otherwise directs. The report shall not be submitted to the court or its contents disclosed to anyone unless the defendant has pleaded guilty or has been found guilty.

(2) *Report.* The report of the presentence investigation shall contain any prior criminal record of the defendant and such information about his characteristics, his financial condition and the circumstances affecting his behavior as may be helpful in imposing sentence or in granting probation or in the correctional treatment of the defendant, and such other information as may be required by the Court. *The Court before imposing sentence may disclose to the defendant or his counsel all or part of the material contained in the report of the presentence investigation and afford an opportunity to the defendant or his counsel to comment thereon.* Any material disclosed to the defendant or his counsel shall also be disclosed to the attorney for the government. (Emphasis added.)

 The last two sentences of Rule 32(c) (2) were added by an amendment of February 28, 1966 which became effective July 1, 1966. The Notes of the Advisory Committee on Rules with respect to the 1966 amendment and the Rule generally state:

Practice in the federal courts is mixed, with a substantial minority of judges permitting disclosure while most deny it.

\* \* \* \* \* \*

Substantial objections to compelling disclosure in every case have been advanced by federal judges, including many who in practice often disclose all or parts of presentence reports.

\* \* \* \* \* \*

Hence, *the amendment goes no further than to make it clear that courts may disclose all or part of the presentence report to the defendant or to his counsel.* It is hoped that courts will make increasing use of their discretion to disclose so that defendants generally may be given full opportunity to rebut or explain facts in presentence reports which will be material factors in determining sentences. (Emphasis added.)

The language of the Rule and the Advisory Committee Note thus make it doubly clear that the trial judge has a discretion to "disclose all or part of the presentence report." And the adjudicated cases indicate that it is not a denial of due process of law for the trial judge in sentencing to rely upon the presentence investigation report without disclosing such report to the defendant or giving the defendant an opportunity to rebut it. *See* Williams v. New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949); Gregg v. United States, 394 U.S. 489, 492, 89 S.Ct. 1134, 22 L.Ed.2d 442 (1969).[9] Disclosure is a matter within

9. The decisions in Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), Specht v. Patterson, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967) and Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967) are distinguishable on their facts. *Kent* held that a District of Columbia statute was

the sound discretion of the trial judge, Good v. United States, 410 F.2d 1217, 1221 (5th Cir. 1969); there is no duty to turn over the presentence report, United States v. Crutcher, 405 F.2d 239, 245 (2d Cir. 1968), cert. denied, 394 U.S. 908, 89 S.Ct. 1018, 22 L.Ed.2d 219 (1969); it is not improper in sentencing to use information obtained outside the presentence report and in-court observations and sentencing does not involve an issue subject to trial procedures, United States v. Trigg, 392 F.2d 860, 864 (8th Cir. 1968); there is no obligation to divulge, nor any right in the defendant to see, the *entire* presentence report at any time, Baker v. United States, 388 F.2d 931, 933 (4th Cir. 1968); furnishing the presentence report to defendant is discretionary with the trial judge, and it is

not a violation of due process to refuse to do so, Thompson v. United States, 381 F.2d 664, 666–667 (10th Cir. 1967); the defendant is not entitled to be informed of the contents of a presentence report and this is not a denial of his right of confrontation, United States v. Fischer, 381 F.2d 509, 511 (2d Cir. 1967); and it is not a violation of due process for a trial court in imposing sentence to rely upon the presentence report without affording defendant an opportunity to contradict or rebut statements contained in the report, Hoover v. United States, 268 F.2d 787, 790 (10th Cir. 1959). *Compare* Hill v. United States, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962); Williams v. Oklahoma, 358 U.S. 576, 79 S.Ct. 421, 3 L.Ed.2d 516 (1959); Powers v. United States, 325 F.2d 666, 667 (1st

controlling in that it made juvenile court records available to persons having legitimate interest in the protection of the child and that his lawyer was such a person. In *Specht* a defendant who was convicted of violating the Colorado statute prohibiting the taking of indecent liberties, which provided for a maximum sentence of ten years, was *subsequently* without notice or a full hearing proceeded against under the Sex Offenders Act and given an indeterminate sentence of one day to life. On such facts the Court held that the invocation of the Sex Offenders Act constituted the "making of a new charge leading to criminal punishment." 386 U.S. at 610, 87 S.Ct. 1209, at 1212. In *Mempa*, following conviction, the imposition of sentence was suspended and the defendant was placed on probation. His probation was subsequently revoked and sentence imposed without the benefit of counsel and the Court held that he was entitled to counsel at that hearing.

There is nothing in the holding of these cases overruling Williams v. New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949) or requiring the disclosure of the entire presentence report to the defendant. In fact, quite to the contrary, in *Specht*, Justice Douglas, speaking for eight members of the Court (Justice Harlan concurred in the result), stated:

"We adhere to Williams v. New York, supra; but we decline the invitation to extend it to this radically different situation." 386 U.S. at 608, 87 S.Ct. 1209, at 1211.

The opinion also states that the Court was still supporting the rationale expressed in *Williams* as follows:

"Under the practice of individualizing punishments, investigational techniques have been given an important role. Probation workers making reports of their investigations have not been trained to prosecute but to aid offenders. Their reports have been given a high value by conscientious judges who want to sentence persons on the best available information rather than on guesswork and inadequate information. To deprive sentencing judges of this kind of information would undermine modern penological procedural policies that have been cautiously adopted throughout the nation after careful consideration and experimentation. We must recognize that most of the information now relied upon by judges to guide them in the intelligent imposition of sentences would be unavailable if information were restricted to that given in open court by witnesses subject to cross-examination. And the modern probation report draws on information concerning every aspect of a defendant's life. The type and extent of this information make totally impractical if not impossible open court testimony with cross-examination. Such a procedure could endlessly delay criminal administration in a retrial of collateral issues." 386 U.S. at 606, 87 S.Ct. 1209, at 1210.

Cir. 1963); Stephan v. United States, 133 F.2d 87, 100 (6th Cir. 1943). This unbroken line of authority is not likely to be repudiated. A contrary rule, if one there is to be, must come from the Supreme Court by way of judicial decision or a change in Rule 32(c). *See* 18 U.S.C. § 3771. Also implicit in the court decisions holding such sentencing procedure to be consistent with due process [10] and the right of confrontation [11] is the further conclusion that such sentencing procedure is not a deprivation of defendant's right "to have the assistance of counsel" [12] since the function of counsel at sentencing was necessarily involved and determined when the due process and confrontation questions were decided.

Having thus determined that it was not a violation of the constitutional rights of defendants appearing for sentence for Rule 32(c) (2) to vest discretion in the judge to disclose all or part of the presentence report, we next consider whether that discretion was properly exercised in this case. In United States v. Queen, 140 U.S.App.D.C. 262, 435 F.2d 66 (1970), we rejected the contention of appellant that it was a violation of due process in the circumstances of that case for the trial judge to refuse to exercise her discretion under Fed.R.Crim.P. 32(c) (2) to disclose the presentence investigative report to appellant or his counsel. In so holding, however, we stated:

> While we believe that the discretion called for by Rule 32 is the exercise of discretion in individual cases, not the discretion of the trial judge to adopt a uniform policy of non-disclosure in all cases irrespective of circumstances, yet on the facts of this case it is clear that the most important element of the usual pre-sentence report, appellant's record of prior convictions, was disclosed to appellant and his counsel during trial. On this record, it appears that appellant and his counsel had an opportunity to confirm or deny the record of previous convictions, and to

explain the circumstances thereof. Hence failure of the trial judge to exercise discretion under Rule 32 does not give rise to any legitimate complaint of lack of due process.

140 U.S.App.D.C. at 263, 435 F.2d at 67.

Thereafter in United States v. Bryant, 143 U.S.App.D.C. 53, 442 F.2d 775 (1971), cert. denied, 402 U.S. 932, 91 S. Ct.1534, 28 L.Ed.2d 866 (April 26, 1971), counsel's request for permission to inspect the presentence report was denied consistently with the judge's uniform policy of treating such documents as confidential communications between himself and the United States Probation Office, and we cited our decision in *Queen, supra,* holding "that the failure of the court in the circumstances there presented to disclose the presentence report did not violate due process of law." However, we held that the court in denying the request had not properly exercised its discretion and remanded the case for resentencing. In *Bryant,* Judge Fahy also stated:

> The Rule vesting discretion in the court, however, has had the approval of the Supreme Court, and the Court had before it the view of its Advisory Committee that due process does not require disclosure. Notes of Advisory Comm. on Rules, *supra.* In addition, in Gregg v. United States, 394 U.S. 489, 492, 89 S.Ct. 1134, 1136, 22 L.Ed. 2d 442 (1969), though not a decision on the issue of due process but a comment upon the terms of the Rule, the Court stated that "[*p*]*resentence reports are documents which the rule does not make available to the defendant as a matter of right.*"

143 U.S.App.D.C. at 55–56, 442 F.2d at 777–778 (emphasis added).

■ In the instant case we find that the trial judge when requested willingly offered to go over appellant's "alleged prior record, to see whether or not there are any discrepancies with you, and with

---

10. U.S.Const., Fifth Amendment.

11. *Id.,* Sixth Amendment.

12. *Id.*

the defendant." She also indicated her receptiveness "to hear any mitigating circumstances * * * that would be helpful in imposing sentence" and offered "to go down the list of the offenses for which she was found guilty so that we will know whether we are talking about the same things or not." The judge then did just that and disclosed the prior convictions from the presentence report that she was considering in connection with her sentence. She also indicated that she was aware of certain juvenile offenses, but was not interested in them or in anything by way of possible offenses except the "offenses for which she was found guilty," thus eliminating arrests where no conviction resulted. Thereafter, appellant's counsel made a lengthy plea for leniency from which it cannot be said that his assistance was ineffective in protecting those rights of appellant which were entitled to protection. Also the transcript here does not show that the court's decision with respect to disclosure of the report conformed to a set pattern it invariably followed in all cases which would negate the exercise of an individual discretion in this case. We accordingly find from the face of the record that the court properly exercised the discretion vested in it by Rule 32(c) (2) and that the rights of appellant were adequately protected.

We are not unmindful that the Committee on Rules of Practice and Procedure of the Judicial Conference of the United States is tentatively suggesting a change in Rule 32(c) to give defendants and their counsel an expanded opportunity in more cases to be advised of a larger portion of the material set forth in the presentence investigative reports, and that such suggested amendment also has the support of many members of the organized bar. However, it is our observation that the opinion of those who have had familiarity with presentence reports is preponderantly opposed to increasing the degree of disclosure. The Notes of the Advisory Committee stated that "most [judges] deny [disclosure]," Fed.R.Crim.P. 32. Those opposed to increasing the burden of disclosure feel that the Probation Officer who makes the report is an arm of the court, much the same as is the judge's law clerk, and that judges can be relied upon to properly evaluate the information supplied. Also, from firsthand familiarity with the situation, many judges believe that making disclosure more mandatory wil dry up reliable sources of information, and reduce the availability of completely frank and reliable personal appraisals of the defendant by experts, and thus alter the form of the report and make it less valuable as an instrument to insure a rehabilitative sentence.[13] However, if there is to be a change in the practice it should come about through a change in the Rule or by Supreme Court decision, and not through this court vio-

13. Regardless of contrary opinion, the Supreme Court in *Specht*, by quoting the prior extract from *Williams*, indicated their recognition that a change in the rule might seriously dry up the flow of information:

"We must recognize that most of the information now relied upon by judges to guide them in the intelligent imposition of sentences would be unavailable if information were restricted to that given in open court by witnesses subject to cross-examination."

386 U.S. at 606, 87 S.Ct. 1209, at 1210. Relying on limited information the dissent speculates that information sources would not dry up. Possibly "dry up" is too absolute a term. Certainly in the event that disclosure became mandatory and informants were so advised (as they should be), some sources would "dry up" and others would become less informative particularly by being less candid and by partially withholding information. To argue to the contrary is to argue against human nature. It is also not persuasive to say that some drying up may already have occurred by the courts being given discretionary authority to disclose the contents of the reports. The fact that some injury may already have occurred is no argument for aggravating the injury. It is also significant that the proposed new rule allows discretion on disclosure where disclosure "would be harmful to the defendant or to other persons * * *." *See* 48 F.R.D. 553, 615 (1970).

lating the clear language of the Rule by stretching the Constitution to new limits, contrary to a long line of previously decided cases.

Affirmed.

J. SKELLY WRIGHT, Circuit Judge (dissenting):

This case reveals a double standard at the heart of our criminal process. Before an individual is adjudged "guilty," a body of constitutional law protects him and an arsenal of adversary rights allows him to protect himself. But after he is determined to be guilty of a crime, his protection shrinks to the barest minimum. It is as though he ceased to be a citizen. From sentencing onward, he is left at the mercy of discretionary decision making by officials proceeding on the basis of "confidential" information. Mrs. Dockery asks us to begin to remedy the situation. She argues that at her sentencing hearing in the District Court she should have been allowed, at least, to see and comment upon the evidence to be used in setting her term of punishment—the presentence investigation report. This limited but elementary issue of due process at sentencing has been extensively debated in the professional journals; but when presented to appellate courts, it has generally been dismissed out of hand.[1] I believe the time is now ripe for us to give more serious attention to the constitutional question involved.

Until now, this court has been satisfied to rely upon the discretion of the sentencing judge to consider each individual request for disclosure of the presentence report, and to grant or deny access to the report under Rule 32(c) (2), Fed.R.Crim.P.[2] *See, e. g.*, United States v. Queen, 140 U.S.App.D.C. 262, 435 F.2d 66 (1970). We have supposed that the issue of disclosure or nondisclosure was a subtle one, varying substantially from case to case. Thus standardless, *ad hoc* discretion did not seem an inappropriate means of administering the rule's mandate that the court "may disclose" the presentence report. Recently, however, both our assumption as to the nature of the issue and our conclusion as to the propriety of entirely unstructured discretion have been called into serious question.

There is now an impressive body of scholarly opinion which challenges the idea that subtle, case-by-case evaluation of requests for disclosure is necessary. I have been particularly impressed by several prestigious studies which have concluded with a recommendation of some measure of *mandatory* disclosure of the presentence report's contents in all cases. Indeed, every recent study has come to that conclusion: the National Council on Crime and Delinquency's Model Sentencing Act,[3] the

---

1. Most courts, at least until recently, have disposed of the issue in a sentence or a paragraph. *See, e. g.*, Roeth v. United States, 5 Cir., 380 F.2d 755, 757 (1967); Powers v. United States, 1 Cir., 325 F.2d 666, 667 (1963); Hoover v. United States, 10 Cir., 268 F.2d 787, 790 (1959). A District Judge in our circuit has said that "[n]o extended discussion is required to dispose of the constitutional claim." United States v. Conway, D.D.C., 296 F. Supp. 1284 (1969). Such summary judicial treatment of a hotly debated constitutional issue is surely regrettable; it is perhaps symptomatic of our inattention to the rights of the "guilty."

2. The relevant portion of the rule reads: "The court before imposing sentence may disclose to the defendant or his counsel all or part of the material contained in the report of the presentence investigation and afford an opportunity to the defendant or his counsel to comment thereon."

3. The Model Sentencing Act would make disclosure mandatory at sentencing of individuals guilty of particularly serious crimes. Model Sentencing Act § 4. The appended Comment states that "when the defendant is a dangerous offender, the length of the commitment and the character of the findings required before sentence may be imposed are such that due process requirements suggest additional safeguards for the defendant. Accordingly, the Act requires that the presentence investigation and clinical reports be made available to him."

American Law Institute's Model Penal Code,[4] the American Bar Association's Project on Minimum Standards for Criminal Justice,[5] and the Report of the President's Commission on Law Enforcement and Administration of Justice.[6] Most recent commentary in the law reviews has come to the same conclusion.[7] Such a body of informed, scholarly opinion should cause us all to reexamine our toleration of unstructured discretionary disclosure.

Perhaps influenced by the trend of opinion, this and other courts have recently begun strictly to review the exercise of discretion under Rule 32(c) (2). We have found that discretion is

sometimes being exercised unsympathetically or carelessly; and we have sought to guide the District Court by stressing the value of disclosure and encouraging a policy of carefully regulated but maximum disclosure. United States v. Queen, *supra*; United States v. Bryant, 143 U.S.App.D.C. 53, 442 F.2d 775 (1971), *cert. denied* 402 U.S. 932, 91 S.Ct. 1534, 28 L.Ed.2d 866 (1971).[8] But still the practice under the rule varies widely. Regular, evenhanded administration of the rule seems to have eluded us, and review for abuse of standardless discretionary authority is inevitably difficult. Thus in the *Bryant* decision, *supra*, this court went further

---

4. The Model Penal Code requires the court to advise "the defendant or his counsel of the factual contents and the conclusions of any pre-sentence investigation or psychiatric examination and afford fair opportunity, if the defendant so requests, to controvert them." It includes a proviso that "[t]he sources of confidential information need not, however, be disclosed." Model Penal Code § 7.07(5) (Tent.Draft No. 2, 1954). The Advisory Committee wrote that "[l]ess disclosure than this hardly comports with elementary fairness." *Id.*, Comment at p. 55.

5. The ABA's provision, approved by the House of Delegates in 1968, reads:
 "(a) Fundamental fairness to the defendant requires that the substance of all derogatory information which adversely affects his interests and which has not otherwise been disclosed in open court should be called to the attention of the defendant, his attorney, and others who are acting on his behalf.
 "(b) This principle should be implemented by requiring that the sentencing court permit the defendant's attorney, or the defendant himself if he has no attorney, to inspect the report. * * * In extraordinary cases, the court should be permitted to except from disclosure parts of the report which are not relevant to a proper sentence, diagnostic opinion which might seriously disrupt a program of rehabilitation, or sources of information which has been obtained on a promise of confidentiality. * * *"
 ABA Project on Minimum Standards for Criminal Justice, Sentencing Alternatives and Procedures 213–214 (1968).

6. The Commission concluded that "[i]n the absence of compelling reasons for non-

disclosure of special information, the defendant and his counsel should be permitted to examine the entire presentence report." President's Commission on Law Enforcement and Administration of Justice, The Challenge of Crime in a Free Society 145 (1967). *See also* President's Commission, Task Force Report: The Courts 20 (1967).
 Although these authorities generally speak in terms of "elementary fairness" or "fundamental fairness," they do not specifically propose that disclosure is constitutionally compelled. Rather, they seem to rely on a policy oriented balancing of interests. However, as I shall demonstrate below, it is precisely such a balancing of interests which determines a defendant's right of procedural due process under the Constitution.

7. *E. g.*, Katkin, Presentence Reports: An Analysis of Uses, Limitations and Civil Liberties Issues, 55 Minn.L.Rev. 15 (1970); Lehrich, The Use and Disclosure of Presentence Reports in the United States, 47 F.R.D. 225 (1969); Cohen, Sentencing, Probation, and the Rehabilitative Ideal: The View from Mempa v. Rhay, 47 Tex.L.Rev. 1 (1968); Guzman, Defendants' Access to Presentence Reports in Federal Criminal Courts, 52 Iowa L.Rev. 161 (1966); Note, Procedural Due Process at Judicial Sentencing for Felony, 81 Harv.L.Rev. 821 (1968).

8. For other decisions seeking to regulate the exercise of discretion under the rule, *see, e. g.*, Baker v. United States, 4 Cir., 388 F.2d 931 (1968); United States v. Fischer, 2 Cir., 381 F.2d 509 (1967).

to govern the exercise of discretion.[9] It encouraged "consideration by the District Court of more uniform guidelines in carrying out the authority granted by the Rule" and required that the decision on a Rule 32(c) (2) motion be set forth on the record so as to facilitate appellate review. Implicit was a recognition that the rule's "may disclose" language does not inevitably command an erratic case-by-case approach, but that it may properly be administered under clear standards. Yet even a requirement of uniform guidelines and on-the-record statement of reasons for nondisclosure would leave the crucial question unresolved: the substance of the guidelines governing disclosure under the rule. How strict should they be? What should they be? The *Bryant* panel foresaw the problem, stating that the issue of a due process right to disclosure and comment was very much an open one.[10]

In my view, the proper standard governing disclosure and comment is very strict and comprehensive—mandatory disclosure of very substantial portions of the report, subject to narrow exceptions when they apply in particular cases. Such a standard does not entirely undercut the procedures of Rule 32(c) (2); it simply regulates the administration of the rule, and leaves some room for discretionary evaluation of particular circumstances.[11] Obviously, though, it does substantially cut back the range of case-by-case discretion now practiced. I accept that consequence. For I have become convinced that the secrecy of official evidence at the sentencing hearing *is not only an anomaly in our legal* system, but also a violation of the due process clause of the Constitution. The limited procedural right at issue here is a very basic one recognized in the most mundane civil hearings. I believe the time has come to demand at least as much at such an important and complex stage of the criminal process.

I do not advocate conversion of sentencing into a trial-type procedure with all the procedural safeguards that accompany guilt determination. Nor do I advocate a totally unlimited right of disclosure and comment. Rather, I would hold that due process requires a carefully tailored measure of disclosure and comment designed to protect the fairness and accuracy of the evidentiary basis of sentencing, but taking account of those objections to disclosure which are substantial. Accordingly, I must dissent from the majority's disposition of this case.

9. Judge Winter of the Fourth Circuit has also argued for much more strict governance of discretionary authority to disclose the report. Baker v. United States, *supra* Note 8, 388 F.2d at 934–935 (concurring opinion).

10. United States v. Bryant, *supra*, 143 U.S. App.D.C. at 56, 442 F.2d at 778. At least one Circuit Judge has already argued that the due process clause does command a measure of mandatory disclosure. Verdugo v. United States, 9 Cir., 402 F.2d 599, 613 (1968) (separate opinion of Judge Browning). *See also* United States v. Bakewell, 5 Cir., 430 F.2d 721, 723 (1970) (dissenting opinion of Judge Wisdom). The widely respected New Jersey Supreme Court has gone farther than any other court in requiring substantial mandatory disclosure of the report, though on nonconstitutional grounds. State of New Jersey v. Kunz, 55 N.J. 128, 259 A.2d 895 (1969).

11. Of course I recognize that, in adopting the 1966 amendments to the Federal Rules, the rulemakers at first proposed and then finally backed away from a requirement of mandatory disclosure. *See* 2 C. Wright, Federal Practice and Procedure: Criminal § 524 (1969). Although it was specifically decided that the rule as finally adopted should not command disclosure, the rule's provision that the court "may disclose" the report does not, I think, pose an obstacle to a substantial measure of mandatory disclosure. The words "may disclose" leave the door open to either *ad hoc* case-by-case discretion or a strictly regulated discretion. And, in any event, the constitutional basis of the disclosure requirement I favor should be finally dispositive.

## I

The Supreme Court has never spoken on the issue before us.[12] But the starting point of any constitutional consideration of the sentencing process must be Williams v. New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). The Court held there that the due process clause does not require confrontation and cross-examination of those individuals who supply information contained in the presentence report; sentencing may be based on an investigative report rather than being restricted to testimony in open court. It gave three reasons for its holding. (1) It stated that the probation officer making up the presentence report plays a nonadversary, indeed benevolent, role vis-à-vis the defendant and that full trial-type adversary safeguards are therefore unnecessary. (2) It also argued that confrontation and cross-examination of witnesses would endlessly delay the sentencing process. (3) And, finally, it said that if witnesses were required to go on the stand they would be reluctant to supply information

relating to sentencing and thus would substantially restrict the range of material available to the sentencing judge.

At the outset it should be made clear that the adversary safeguards which the Williams Court found unnecessary, excessively time consuming and restrictive of important information were the relatively extreme sort required at trial. It rejected only "rigid adherence [at sentencing] to restrictive rules of evidence properly applicable to the trial." 337 U.S. at 247, 69 S.Ct. 1079 at 1083. And it specifically left open the possibility that some due process safeguards would be required at sentencing, stating: "What we have said is not to be accepted as a holding that the sentencing procedure is immune from scrutiny under the due-process clause." Id. at 252 n. 18, 69 S.Ct. 1079 at 1085. Hence Williams poses the question whether fundamental fairness demands an abbreviated adversary process at sentencing—such as disclosure of and comment upon the presentence report.

12. Several courts have erroneously read Williams v. New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), to have resolved the issue. See, e. g., cases cited in Note 1, supra. Unfortunately, the Supreme Court gave some credence to this misreading of Williams in Specht v. Patterson, 386 U.S. 605, 606, 87 S.Ct. 1209, 1210, 18 L.Ed.2d 326 (1967), observing that "[w]e held in Williams * * * that the Due Process Clause of the Fourteenth Amendment did not require a judge to have hearings and to give a convicted person an opportunity to participate in those hearings when he came to determine the sentence to be imposed." As I demonstrate in text, the Williams issue concerned trial-type hearings and trial-type participation by the defendant—not all hearings and all participation. Until the Court holds otherwise, the Williams decision can stand only for what it was concerned with.

Other Supreme Court decisions are sometimes cited mistakenly as dispositive of the issue. One is Williams v. Oklahoma, 358 U.S. 576, 584, 79 S.Ct. 421, 3 L.Ed.2d 516 (1959). However, that decision does no more than accurately repeat the holding of Williams v. New York, supra. Another frequently cited passage

is from Gregg v. United States, 394 U.S. 489, 492, 89 S.Ct. 1134, 1136, 22 L.Ed.2d 442 (1969) : "Presentence reports are documents which the rule does not make available to the defendant as a matter of right." The Gregg Court obviously was doing no more than accurately stating the content of the rule. It is, of course, true that the rule itself does not make disclosure mandatory; but the Gregg Court said nothing about a due process issue. Finally, Hill v. United States, 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962), is sometimes cited. The Court said there that failure to give the defendant an opportunity for allocution was not "constitutional error." But the Court explicitly made clear that Hill is very narrow. It made a point of noting that the defendant never asked to speak before the sentence was imposed, that there was no suggestion the judge was misinformed about anything, and that there was no claim the defendant would have had anything to say if invited to speak. None of these factors is present in the case before us, or in most cases. The constitutional right to disclosure which I favor would depend on the defendant's requesting disclosure and an opportunity to make comments.

As a general rule, the due process clause requires a fair hearing when government acts to seriously injure a particular individual and when its decision so to do turns upon essentially "adjudicative facts"—facts about the particular individual and his activities.[13] This principle is at least as old as Londoner v. Denver, 210 U.S. 373, 28 S.Ct. 708, 52 L.Ed. 1103 (1908), a case involving an assessment on land for the cost of paving a street. Yet, as the *Williams* decision illustrates, the required elements of a "fair hearing" are by no means inflexible.[14] Until recently, the right to any sort of hearing could be eliminated if the matter in dispute was classified as a "privilege"; and the extent of the right was often diluted if the proceeding could be labeled "civil" rather than "criminal." Now, however, procedural due process claims must be adjudicated under a more realistic functional analysis. Mere labels do not end the constitutional discussion.[15] As summarized by one commentator, the approach demanded by the Supreme Court's recent decisions "focus[es] on the consequences of the proceeding for the defendant, the role that the safeguard [at issue] plays in

assuring that the outcome of the proceeding is proper, and the cost to society of providing the safeguard." [16] Just last term, the Supreme Court again utilized this approach in Goldberg v. Kelly, 397 U.S. 254, 262–263, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), a case involving the seeming "privilege" of receiving welfare benefits, and in In re Winship, 397 U.S. 358, 365–367, 90 S. Ct. 1068, 25 L.Ed.2d 368 (1970), a case involving the supposedly "noncriminal" juvenile court system. In both cases, the Court weighed the individual's interests and the opposing governmental interests, and required procedural protections a good deal more strict than those at issue in this case.

As applied to procedural rights at the sentencing hearing, due process analysis requires us to weigh three interests: (1) the defendant's interest in the substantive outcome of the hearing, (2) his interest in the particular right to know and meet the evidence in the presentence report, and (3) the governmental interest in continued secrecy of the report. It will not do simply to label sentencing a matter of "privilege" or to call it "noncriminal" in nature.

13. *See* Davis, The Requirement of a Trial-Type Hearing, 70 Harv.L.Rev. 193 (1956).

14. "Due process sometimes requires a trial type of hearing but allows the relaxation of one or more attributes of such a hearing." Davis, *supra* Note 13, 70 Harv. L.Rev. at 195. *See, e. g.*, United States v. Nugent, 346 U.S. 1, 73 S.Ct. 991, 97 L.Ed. 1417 (1953).

15. On the decline of the "civil"—"criminal" labeling analysis, *see* The Supreme Court, 1965 Term, Highlights of the Term, 80 Harv.L.Rev. 125 (1966). On the corresponding decline of the "right"—"privilege" analysis, *see* Davis, *supra* Note 13, 70 Harv.L.Rev. at 222–232; Van Alstyne, The Demise of the Right-Privilege Distinction in Constitutional Law, 81 Harv. L.Rev. 1439 (1968).

 In any event, neither the "civil" nor the "privilege" label could convincingly be applied to sentencing, though some have argued such a position. The sentencing proceeding imposes clearly "criminal" punishment; although it does not deter-

mine "guilt" or "innocence," it cannot realistically be termed "civil." Nor can a less than maximum sentence be termed a "privilege." Our criminal laws do not set the maximum punishment as *the* penalty for commission of a crime, and then allow a sentencing judge to dispense merciful reductions of it. Rather, they establish a range of punishments, specifying no particular penalty within the range. Similarly, a finding of guilt in no way includes a decision that the maximum sentence should be imposed. The judge or jury finding guilt hears none of the evidence peculiarly relevant to the issue of sentencing, and can know only the possible range of sentences. Sentencing is not an act of grace; it is the result of an extensive inquiry designed to fit a particular punishment to a particular crime and a particular criminal. *See* Kadish, Legal Norm and Discretion in the Police and Sentencing Processes, 75 Harv.L.Rev. 904, 919–926 (1962).

16. The Supreme Court, 1965 Term, *supra* Note 15, 80 Harv.L.Rev. at 125.

## II

I need not dwell on the defendant's interest in the substantive outcome of the sentencing hearing. It is obviously very, very great. Because our criminal laws generally authorize a broad range of permissible punishments for a particular crime—often from a suspended sentence and freedom to years or decades in prison—the sentencing hearing assumes as much importance as the trial itself. What personal interest (other than life itself) could be greater than one of liberty *versus* incarceration, or imprisonment for a short time *versus* imprisonment for most of a lifetime? [17]

An individual's interest in knowing and meeting official evidence to be used at an adjudicative hearing is also generally accorded great weight in our legal system. Two very basic principles underlie our recognition of this interest. A defendant's right to see and comment on the evidence against him is essential, first, if we are to honor our due process commitment to truth seeking in the administration of the law. "The [defendant knows] more about the facts concerning [himself] and [his] activities than anyone else is likely to know, and

the [defendant is] therefore in an especially good position to rebut or explain evidence that bears upon adjudicative facts." [18] Such adversary comment provides a crucial check on official findings and conclusions which will be relied upon by the decision maker, but which cannot be assumed to be infallibly valid. Secondly, disclosure and comment are essential to our commitment to respect for individual dignity in the criminal process. They insure that the defendant is treated as a citizen entitled to know what is happening to him and why and how it is happening—not as a Kafkaesque victim of Star Chamber secret proceedings.

At trial and in very many sorts of civil hearings, the due process clause has been held to require no less—and often more. In the words of the Supreme Court:

"Certain principles have remained relatively immutable in our jurisprudence. One of these is that where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the

17. The Supreme Court gives "great weight [to] the 'hardship' factor in the rationing of procedural due process." Van Alstyne, The Constitutional Rights of Teachers and Professors, 1970 Duke L.J. 841, 867. In recent cases the Court has required procedural protections—often more stringent than mere disclosure of and comment on official evidence—when the individual's stake in the particular proceeding was less great than at sentencing. *See, e. g.,* Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (the individual's interest in receipt of welfare benefits; procedural rights including confrontation and cross-examination); Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) (the interest in receipt of wages; notice and opportunity to be heard in court); Jenkins v. McKeithen, 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969) (the interest in avoiding a state criminal investigative commission's public declaration of criminal guilt; rights including confrontation and cross-examination).

This court very recently decided a case involving transfer of a patient of St. Elizabeths Hospital to the maximum security section of the institution. Jones v. Robinson, 142 U.S.App.D.C. 221, 440 F.2d 249 (decided February 4, 1971). The panel stated that, "because of the consequences of that [transfer] to patients like appellant, some minimal degree of due process is required in order to make as certain as the hospital authorities reasonably can the correctness of their decision." 142 U.S.App.D.C. at 223, 440 F.2d at 251. It required that official investigative memoranda used in the transfer decision—analogous to the presentence report—be disclosed to the patient "and that he be given an opportunity to respond to the allegations contained therein." 142 U.S.App.D.C. at 224, 440 F.2d at 252. The court also required confrontation and cross-examination of witnesses when practicable.

18. Davis, *supra* Note 13, 70 Harv.L.Rev. at 199.

individual so that he has an opportunity to show that it is untrue. * * *"

Greene v. McElroy, 360 U.S. 474, 496, 79 S.Ct. 1400, 1413, 3 L.Ed.2d 1377 (1959). The *Greene* case is illustrative of the apparent asymmetry in our present treatment of civil and criminal hearings. It concerned not a criminal sanction, but the revocation of an engineer's security clearance. The Supreme Court described the clearance procedure as follows:

"* * * [U]nder the present clearance procedures not only is the testimony of absent witnesses allowed to stand without the probing questions of the person under attack which often uncover inconsistencies, lapses of recollection, and bias, but, in addition, even the members of the clearance boards do not see the informants or know their identities, but normally rely on an investigator's summary report of what the informant said without even examining the investigator personally."

360 U.S. at 497–499, 79 S.Ct. 1400, at 1414–1415. (Footnotes omitted.) That accurately describes the present sentencing hearing as well. Surely the stakes at sentencing are as great as the stakes at a security clearance proceeding. In *Greene* the Supreme Court found that the security clearance hearing "failed to comport with our traditional ideas of fair procedure." *Id.* at 508, 79 S.Ct. 1400, at 1419. But most courts have been satisfied with the equally summary procedures at sentencing. Why should the very basic principles applied in such civil contexts as *Greene* [19] not also be applied to the sentencing process—if not to demand confrontation and cross-examination, at least to demand the more fundamental right of disclosure of and comment upon the probation officer's report? What is so different, so peculiar, about the sentencing hearing?

A. Most troublesome is an argument drawing upon the Supreme Court's opinion in Williams v. New York, *supra*. The *Williams* Court characterized the probation officer's role in sentencing as nonadversary. As the compiler of the presentence report, the probation officer is, in theory, entirely neutral. It might seem, then, that the defendant has nothing to fear from the report. Why introduce an adversary element into a nonadversary proceeding? What need is there for disclosure of and comment upon an impartially "scientific" document such as the presentence report?

The answer, I believe, is simple: probation officers—like the rest of us—are fallible. Benevolent intentions and theoretical role definitions do not insure against factual inaccuracy in the presentence report. Nor do they eliminate the risk of occasional prejudice or narrow vision on the part of the probation officer or his informants. The only effective safeguard against the use of inaccurate, prejudicial or incomplete information as a basis for sentence is to allow the defendant himself to review the report and bring any shortcomings to the judge's attention.

The danger might not be so great if the presentence report detailed only public, objective, easily verifiable information, such as the prior criminal record. But, in fact, the typical report goes at great depth into very subtle, private, subjective matters. It includes, for example, an official summary of the "defendant's version" of his offense. The risk of distortion and underinclusion here is obviously substantial. And even more fraught with danger is the report's commentary on the defendant's family life, personal habits and psychological condition. Most of this information is gained from associates of the defendant and other informants who may have any number of personal axes to grind and limited commitment to factual accuracy.

19. The *Greene* Court did not actually strike down the security clearance procedures as unconstitutional. Rather, it analyzed the "serious constitutional problems" in order narrowly to interpret the clearance boards' delegated authority, avoiding collision with the due process clause.

Time to check and double-check their stories is severely limited.[20] The probation officer's "evaluative summary"—assessing the defendant's character and predicting the likelihood of his going straight in the future—puts a highly problematic gloss [21] on all this information and cannot help but sway a judge who lacks benefit of the defendant's own commentary or rebuttal.

It is, of course, useful—as was done here—to allow defendants to present to the judge any general mitigating information they may have, or even to present their own "presentence report." To some extent, that eliminates the problem of narrow vision on the part of the probation officer. But it does not eliminate the problems of inaccurate or prejudicial statements in the official report. The defendant cannot correct an error which is hidden from him. There is no guarantee that the mitigating information he may present to the judge will bring a conflict to light. Thus the judge is left relying on whatever the probation officer gives him.

The circumstances of Mrs. Dockery's sentencing illustrate the danger and unfairness of confidentiality. As a matter of fact, though unknown to Mrs. Dockery, the presentence report in question was made up of two reports.[22] The first dealt with the crime for which she was being sentenced—escaping from custody. The second, attached to the first, dealt with a two-year-old narcotic conviction. The apparent reason for attaching the second report was that the information contained therein concerning Mrs. Dockery's family history, education and health was still applicable. The probation office evidently thought it too taxing simply to transfer that information to the new report and instead attached the old report in its entirety, thereby including a good deal of irrelevant commentary about a past crime and possibly outdated conclusions about Mrs. Dockery's personal life and problems. Had defense counsel known what was before the judge, he might well have feared prejudice, made an objection, or at least offered an explanation. However, he was left in the dark. The judge consented only to read aloud the list of Mrs. Dockery's prior convictions and to give counsel time to present any of his own information in mitigation of sentence. Counsel did make brief comments concerning his client's mental health and certain charges against her which had since been dropped. But for the most part the presentence report remained the only basis for sentencing. The final term of punishment was imposed pursuant to a report which surely would have been challenged on the ground mentioned above and which may also have contained any number of other inaccurate or prejudicial statements about Mrs. Dockery.

The substantial risk of judgment based on inaccurate or distorted information offends our fundamental due process values. In a case where, by chance, the sentencing judge disclosed inaccuracies in the presentence report and proceeded to sentence an uncounselled defendant pursuant to that misinformation, the Supreme Court has found a denial of due process. Townsend v. Burke, 334 U. S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948). How many such travesties of justice are hidden by nondisclosure of the presentence report? We cannot know. But numerous accounts of similar injustices exist to warn us of the danger.[23]

20. *See* Guzman, *supra* Note 7, 52 Iowa L.Rev. at 167 n. 25; Note, *supra* Note 7, 81 Harv.L.Rev. at 837.

21. Probation officers "generally do not have to be trained in psychology, psychiatry, or even social work." Note, *supra* Note 7, 81 Harv.L.Rev. at 837. There are many examples in their reports of "unsupported conclusions, undefined value judgments, and even bias." Guzman, *supra* Note 7, 52 Iowa L.Rev. at 165.

22. Mrs. Dockery's presentence report was part of the record on appeal in this case.

23. *See, e. g.,* Guzman, *supra* Note 7, 52 Iowa L.Rev. at 165.

The above analysis should demonstrate that the probation officer's benevolent intentions and nonadversary role do not eliminate substantial dangers to a defendant's interest in due process. It is not enough to defeat a due process right simply to characterize the sentencing process as "nonadversary." It is significant that in recent years the Supreme Court has taken this very position with regard to the juvenile courts. In Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), and In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), the Court was told that the "impartial scientific expertise" of juvenile court officials made due process adversary safeguards unnecessary. In *Kent* and *Gault*, the Court rejected the argument. *Kent* is particularly relevent to our case.[24] The Government argued there that the juvenile's opportunity to present his own information to the court without seeing staff reports—similar to presentence reports—satisfied due process. It argued that defense counsel's role was not to "denigrate the staff's submissions and recommendations." The Court, however, responded that "[o]n the contrary, if the staff's submissions include materials which are susceptible to challenge or impeachment, it is precisely the role of counsel to 'denigrate' such matter. There is no irrebuttable presumption of accuracy attached to staff reports." 383 U.S. at 563, 86 S.Ct. 1045, 1058. And the *Kent* Court, interpreting a federal statute "in the context of constitutional principles," held that staff reports must be disclosed to defendants.

Another recent Supreme Court decision, moreover, indicates that the Court is beginning to move toward a more openly adversary conception of the sentencing process. In Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967), the Court held that the most basic component of the adversary process —the right to counsel—applies at least in some sentencing situations as a matter of constitutional law. It strongly suggested that its holding should be taken to regulate all sentencing proceedings, relying on its earlier decision in Townsend v. Burke, *supra,* which it said "might well be considered to support by itself a holding that the right to counsel applies at sentencing." 389 U.S. at 134, 88 S.Ct. at 257. Recognition of a right to counsel at sentencing is highly important for two reasons. First, it is the crucial first step in bringing some regularity and structure to sentencing proceedings. It represents the Supreme Court's acknowledgement that the historic adversary approach of our criminal process is, to some degree, appropriately suited to an enlightened sentencing policy. Sentencing is not to be considered a strictly "expert" or impartial administrative process. The right to counsel at sentencing also recognizes that this protection is worth some cost in delay and some sacrifice of our myth that the state can insure its own impartiality in imposing discretionary sentences.

The right to counsel is also important in its direct bearing on the presentence report issue. For the right to be meaningful, some requirement of disclosure and comment is necessary. As has been mentioned above, the *Mempa* Court relied on the old case of Townsend v. Burke, *supra.* *Townsend* directly involved the presentence report. The judge at the original sentencing proceeding had recited much of the report from the bench, and a good deal of what he said was

---

24. The ABA Committee report relies on the implications of Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). ABA Project on Minimum Standards for Criminal Justice, *supra* Note 5, at 222–223. On the use of *Kent* in this context, *see* Katkin, *supra* Note 7, 55 Minn.L.Rev. at 26–30. The Supreme Court's decision in Goldberg v. Kelly, *supra* Note 17, also seems relevant.

There the Court refused to allow a cutoff of welfare benefits on the sole basis of a welfare department worker's report, despite the fact that welfare workers are supposedly nonadversary "friends" of the recipient. Rather, the Court required a pretermination hearing, complete with rights of confrontation and cross-examination of witnesses.

factually incorrect and prejudicial to the defendant. The defendant had no counsel to correct the misimpressions in the judge's mind. Finding a violation of due process, the *Townsend* Court said that "[c]ounsel, had any been present, would have been under a duty to prevent the court from proceeding on such false assumptions * * *." 334 U.S. at 740, 68 S.Ct. 1252, 1255. In *Mempa* the Court stated that *Townsend* "illustrates the critical nature of sentencing in a criminal case." 389 U.S. at 134, 88 S.Ct. 254, at 257. But how is counsel to perform the vital function identified in *Townsend* and referred to in *Mempa* if the judge does not disclose the contents of the presentence report? If sentencing influenced by blatantly inaccurate information which the defendant cannot effectively challenge amounts to a violation of due process, and if a major purpose of the right to counsel at sentencing is to prevent such miscarriages of justice, then some disclosure of and comment upon the report is required. Enjoyment of constitutional rights ought not to depend on the fortuity of a judge's voluntary recital of the report's contents.

B. There is another argument supposedly justifying minimal due process protection, which also rests on a purported peculiarity of the sentencing hearing. It is said that the defendant's interest in protection is small since sentencing is simply an administrative matter, following inexorably from the trial where all the important fact findings have been duly made. The Supreme Court has considered this argument in Specht v. Patterson, 386 U.S. 605, 87 S.Ct. 1209 (1967). There it required full due process protection—including confrontation and cross-examination of witnesses—for the defendants at their sentencing under a sex offenders act. The Court sought to distinguish that situation from the normal sentencing proceeding at issue in Williams v. New York, *supra*, by observing that:

"The Sex Offenders Act does not make the commission of a specified crime the basis for sentencing. It makes one conviction the basis for commencing another proceeding under another Act to determine whether a person constitutes a threat of bodily harm to the public, or is an habitual offender and mentally ill. That is a new finding of fact * * * that was not an ingredient of the offense charged. * * *"

386 U.S. at 608, 87 S.Ct. 1209, at 1211.

It should be recognized, first, that *Specht*—like *Williams*—involved the right of confrontation and cross-examination. It certainly does not hold that less stringent protection, such as the opportunity to know and meet official evidence, is not required at sentencing. More importantly, though, the distinction which the *Specht* opinion draws between normal sentencing proceedings and sentencing under a sex offenders act is one which cannot long be maintained. The distinction is an entirely formalistic one, based upon the invocation of "another Act." There is *no* real distinction insofar as "new findings of fact" are concerned.[25] At a normal sentencing hearing as at *Specht* sentencing, there is a host of "new fact findings" to be made. Most of the relevant facts are in no way brought before the fact finder at trial; they range from the "defendant's version of the offense" (if the defendant did not testify at trial) to family history, habits and personality. Indeed, the presentence report often concerns itself with the very matters said in *Specht* to be "new": whether the defendant "constitutes a threat of bodily harm to the public, or is an habitual offender and mentally ill."

Thus normal sentencing *is* a "new proceeding." The "new" facts brought out in the presentence report greatly influence the length of the sentence imposed. They are surely as subtle and complex—

25. The ABA Committee report argues for a similar position very persuasively. ABA Project on Minimum Standards for

Criminal Justice, *supra* Note 5, at 220–221.

perhaps more so—than the question whether the defendant actually committed a particular act. The risk of inaccuracy and prejudice in fact finding is surely no less great at sentencing than at trial. The defendant's need to know and meet official summaries of these "new" facts is, correspondingly, no less great than his need to know and meet trial facts.

For most criminal defendants in our system, the case is even stronger. Up to 90 per cent of them—including Mrs. Dockery—plead guilty without a trial. For them, the sentencing hearing is clearly a "new" proceeding considering "new" facts. It is the *only* occasion on which the facts of the crime—to say nothing of all the other facts relevant to sentencing—are presented to and evaluated by a judge.

To my mind, then, it is clearly demonstrated, first, that the defendant's substantive interest in the outcome of the sentencing hearing is very great; second, that his interest in seeing and commenting upon the presentence report is also very great; and third, that there is nothing peculiarly distinctive about the sentencing hearing which in any way dilutes these two interests. With such weighty interests on the defendant's side of the scales, the opposing governmental interest must be very compelling in order to justify nondisclosure of the presentence report.

### III

In Williams v. New York, *supra*, the Supreme Court identified two sorts of governmental interests opposing confrontation and cross-examination at sentencing: the "drying up" of informative sources and delay. Both objections are made to disclosure of the presentence report. And some commentators have suggested a third objection. Disclosure of the report, they say, would hinder the rehabilitation of the defendant by undermining his relationship with his probation officer, informing him of social-psychological diagnoses of himself, and generally embittering him.

In evaluating these interests, the ABA's study of sentencing alternatives and procedures stated that "[t]he major difficulty with the arguments in favor of the secrecy of the report is that each is aimed at a specific evil which may indeed be a legitimate cause for concern, but yet is generally asserted as supporting non-disclosure in all cases irrespective of the existence of even a remote possibility in the particular case of the actual occurrence of the feared result." [26] I share this view. Furthermore, most of the legitimate objections to disclosure and comment can be washed away easily by building narrow exceptions into the scope of mandatory disclosure and by setting careful ground rules for the extent of a defendant's adversary comment on the presentence report. Of course, such adjustments may not obliterate the objections entirely. But they do reduce the opposing governmental interest to such minimal weight that it is easily outbalanced by the defendant's great interest in knowing and meeting the evidence against him at sentencing.

A. Disclosure of the presentence report will "dry up" informative sources, it is said, because those informants will fear retaliation from an angry defendant or destruction of a relation of trust between themselves and the defendant. It should be clear, first of all, that the disincentive posed by disclosure of the presentence report cannot be nearly as great as by a requirement of confrontation and cross-examination. An informant surely will be more willing to supply information to a probation officer, despite disclosure, than to come into court, testify under oath, and submit to the defendant's cross-examination. Thus the governmental interest opposing the due process right here is not so great as that

26. *Id.* at 217–218. *See also* the discussions of the supposed governmental interests in secrecy in State of New Jersey v. Kunz, *supra* Note 10, and articles cited in Note 7, *supra.*

found dispositive in Williams v. New York, *supra.*

It should also be clear that the "drying up" of sources argument does not apply at all to some of the most important sources of information in the report. Prime examples are the police department and the prosecutor's office, which provide such information as prior criminal record and the Government's and the defendant's "version of the offense." It cannot be supposed that these agencies will "dry up" as sources of information in fear of what the defendant may think about or do to them. Thus the substantial portion of the report which they provide can be disclosed without any such cost. Another potential source is likely to be *more* cooperative if disclosure is guaranteed. That is the defendant himself. If he is assured of seeing and having an opportunity to correct the report of his interview with the probation officer, he will probably talk more freely.

The "drying up" of sources argument also applies rather unconvincingly to another frequent supplier of information —social welfare agencies which have had dealings with the defendant and may know of his family history, education, economic situation and so forth. The fear of the defendant's retaliation is not a major motivating factor as far as these agencies are concerned. At most, they may sometimes have a relation of trust with the defendant which is worthy of some protection. This interest, however, does not seem sufficient to defeat disclosure. It seems unlikely that such agencies would refuse, despite disclosure, to cooperate with the probation office and the sentencing judge. They often desire reciprocal transfers of informa-

tion from the probation office and would, hopefully, be willing to subordinate their parochial concerns to the greater concern of fairness in the criminal process. In any event, the governmental interest in denying an individual its information about him, on the ground that disclosure would make him trust it less, is paternalistic at best and a gross distortion of priorities. What is more important—a friendly relationship between the defendant and his welfare worker or the length of time the defendant must spend in prison?

Adverse information provided by the defendant's associates or other informants known to him poses a somewhat more difficult question. Even here, however, the danger of such sources "drying up" is too often wildly overestimated. In the District of Maryland, for example, the federal court routinely discloses most of the presentence report to defendants, but Chief Judge Thomsen reports that this practice has not resulted in drying up sources of information, or in any dilution of the report.[27]

Moreover, the "drying up" argument has lost much of its force since the change in Rule 32(c) (2) permitting the court to make a presentence report available to the defendant and his counsel. Because discretion must be exercised in each case, the probation officer cannot know whether the report will be disclosed. Thus no informant can be assured that his information will remain confidential. If there is a "drying up" effect, it must already exist under the present discretionary system. Yet from all accounts presentence reports have not suffered measurably in quality or extent of information.[28] There is no evidence of widespread retaliation by defendants

27. Thomsen, Confidentiality of the Presentence Report: A Middle Position, 28 Fed.Prob. 8 (March 1964).

28. "Experience in jurisdictions which require disclosure does not lend support to the argument that disclosure will result in less complete presentence reports or the argument that sentencing procedures will become unnecessarily protracted."

Proposed Amendments to Criminal Rules, Advisory Committee Note, 48 F.R.D. 553, 618 (1970). The ABA also discounts the fear of sources "drying up." Its committee reports that that assessment is "based on the experience of those members of the Committee who have lived under a system in which disclosure is routine, and is supplemented by the Committee's

whose reports have been disclosed. As the Supreme Court stated with reference to disclosure of juvenile court staff reports in Kent v. United States, *supra*: "Perhaps the point of it is that * * * while nondisclosure may contribute to the comfort of the staff, disclosure does not cause heaven to fall." 383 U.S. at 564 n. 32, 86 S.Ct. 1045, 1058.

To the extent that the fear is a real one, however, certain exceptions to full disclosure may be in order. Revelation of extremely inflammatory information to a defendant who has demonstrated violent inclinations might well be unwise. The information, nonetheless, could be shown at least to the defense counsel, or in some cases disclosed with the name of the informant deleted. To limit all disclosure to counsel or to delete all names of informants, however, would go too far, since it is the defendant himself who best knows the truth of the reported statements and his best rebuttal often may be that the particular informant is somehow biased against him.[29] When certain very small portions of the report are not disclosed to the defendant for the above reasons, I agree with the ABA committee that "the court should be required to state for the record the reasons for its action and to inform the defendant and his attorney that information has not been disclosed. The action of the court in excepting information from disclosure should be subject to appellate review."[30]

Thus the "drying up" of sources argument simply does not apply forcefully to most of the report, and when it does apply it can be avoided by building a narrow exception into the disclosure requirement. It is important to recognize, moreover, that the "drying up" phenomenon is only one potential effect of disclosure. There is a more likely, more pervasive and more important effect. A right of disclosure and comment should function to keep the probation officer's sources scrupulously honest in the assertions they make. Even from the governmental standpoint, this must be a major benefit.

B. The argument that disclosure of the presentence report may hinder a defendant's rehabilitation really refers only to a few items in the report. If a defendant sees psychological diagnoses of himself, it is said, he will be more resistant to successful treatment. Perhaps so, and perhaps genuine psychiatrists' diagnoses should be shown only to defense counsel. But all too often pseudoscientific characterizations of the defendant creep into the report by way of the probation officer.[31] These are not genuine "diagnoses," and have little if any medical validity. Yet they may be highly prejudicial. The defendant's interest in discrediting the nonexpert basis of

examination of sample reports produced under such a system. The conclusion is that there is little factual basis for the fear that information will become unavailable if the report is disclosed." ABA Project on Minimum Standards for Criminal Justice, *supra* Note 5, at 219.

29. I am also opposed to disclosure simply of the "substance" of the report or of only "derogatory" sections of the report. For the defendant effectively to counteract any misimpressions or inaccuracies in the report, he should be allowed to see the report itself. How can we be sure that the judge's oral summary of the report's contents will be accurate? Surely we do not want to have to review the judge's choice of words on appeal. In any event, I see very little, if any, cost

in allowing the defendant to see the actual report; indeed, it would save the judge the time consuming task of orally condensing the report's contents. As to disclosure of only "derogatory" parts of the report, I believe that this rule, too, is unfortunately vague and difficult of fair administration. It is up to the defendant to decide what may harm him and what may not. Of course, it might be helpful for the judge to point out during the hearing the portions of the report which he finds particularly relevant to sentencing.

30. ABA Project on Minimum Standards for Criminal Justice, *supra* Note 5, at 214.

31. *See* Note 21, *supra*.

such characterizations is important and should not be denied. Hence only when there is a genuine diagnosis by a psychiatrist and when the psychiatrist certifies that disclosure would harm treatment of the defendant should an exception to the mandatory disclosure rule be allowed.

The other item in the typical report whose disclosure would supposedly impede rehabilitation is the probation officer's "evaluative summary." It is argued that, since the defendant must later cooperate with the probation officer, he ought not to know the officer's unfavorable conclusions which may have extended his stay in prison. With a minor administrative adjustment, however, the problem could be eliminated: the probation office could assign a different officer to the defendant after sentencing.[32] Even were this impossible, nondisclosure of the "evaluative summary" would not be justified. It is a part of the report far too influential and far too subject to inclusion of "unsupported conclusions, undefined value judgments, and even bias on the part of the probation officers." [33] The defendant's interest in knowing and meeting the officer's "evaluative summary" clearly outweighs whatever paternalistic interest the Government may have in denying it to him.

C. The final opposing governmental interest is in speedy and efficient procedures. Such an interest, of course, opposes all extensions of procedural due process. Indeed, it opposes enforcement of most constitutional rights. We should, therefore, examine such a supposed interest with particular care before according it very much weight in our calculations.

In Williams v. New York, *supra*, the Supreme Court stated that confrontation and cross-examination of witnesses at sentencing would cause "endless" delay. That is not the case with disclosure of the presentence report. The time consuming task of putting on the stand every witness who provides presentence information would be avoided. Whatever delay a right of disclosure and comment would cause depends upon the extent of comment allowed. That comment might fairly be limited to oral or written rebuttal by the defendant and his counsel, with a right to introduce rebutting affidavits of any individual who knows pertinent facts about the defendant. *Williams* might well preclude the defendant's putting his own witnesses on the stand, but the affidavit method should serve almost as well. Thus a right of disclosure and comment does not inevitably turn the sentencing hearing into a trial-type evaluation of sworn testimony. Of course, the right would be of minimal value if the defendant and his counsel were not given the presentence report some time before the hearing so that they might study it, prepare their arguments, check any doubtful assertions in it, and obtain rebuttal affidavits. But there could be a strict limit on this time period, which in any event imposes no administrative expense on government. The hearing itself could still be conducted quite expeditiously.

Those who oppose a right of disclosure and comment sometimes suggest that the defendant would tend to confuse rather than enlighten the sentencing judge, and unnecessarily extend the hearing, by challenging almost every harmful statement in the report regardless of its truth. I doubt that a defendant would go too far, making wildly inappropriate challenges, since to do so would surely risk judicial skepticism of his whole argument and disincline the judge to deal with him mercifully. Under the present practice of discretionary disclosure and comment, there is little if any evidence of such gross irresponsibility.[34] It may even turn out—as the ABA study of

---

32. *See* Note, *supra* Note 7, 81 Harv.L.Rev. at 840.

33. *See* Guzman, *supra* Note 7, 52 Iowa L.Rev. at 165.

34. In courts which now generally practice a substantial measure of disclosure, there has not been a problem of major delay. *See* Note 28, *supra*. In the face of arguments that mandatory disclosure would

sentencing suggests [35]—that disclosure would often speed up the sentencing hearing, since defense counsel would know what was before the judge and would not waste time pursuing nonessential matters.

Of course, when there is a conflict between assertions of the report and of the defendant, it may sometimes be difficult for the sentencing judge to resolve the issue. But that difficulty is preferable to the false confidence now placed in a secret report. It is, furthermore, inherent in all adversary procedures guaranteed by the due process clause. On balance, I strongly agree with another panel of this court that disclosure of and adversary comment on the report functions basically to "help" the judge, not to confuse him. United States v. Bryant, *supra*, 142 U.S.App.D.C. at 55, 442 F.2d at 777. He is, after all, experienced in the adversary process and may assess at least the defendant's demeanor credibility in any representations he may make. A conscientious judge can only be thankful for a check on the presentence report's accuracy. If disclosure and comment, finally, take somewhat more time and effort than reliance on a secret report, it is time and effort well spent. What, really, is the great governmental interest in hustling defendants through their sentencing as if on an assembly line? With new and very complex fact findings at issue, it is incongruous to argue that government has a particularly pressing interest in speed. By comparison to the many civil matters in which major governmental resources are devoted to fair procedure,

the sentencing process—with life and liberty at stake—seems to cry out for devotion of additional time and energy. Hence I cannot assign a great deal of weight to the minimal cost in delay at issue here.

## IV

Thus I conclude that applicable principles of due process demand, at the very least, disclosure of and comment on the presentence report at the sentencing hearing. The constitutional balance of interests is not a particularly close one. Rather, it seems very heavily weighted in favor of an effective, though abbreviated, adversary process at sentencing. That being the case, there is no compelling reason to wait for the revisions of the Federal Rules of Criminal Procedure [36] or other legislative measures to remedy the situation. Despite proposals for reform, there is no guarantee that the forces for suppression will not succeed, as they have in the past, in denying the defendant's right to disclosure.[37] It is our duty, as I see it, to protect clear constitutional rights *now*—not to restrain ourselves from constitutional holdings in the hope that someone else will do it for us. This is particularly true when it is the integrity of the judicial process itself that is at issue.

The time has come, indeed it is long past, to recognize that "guilty" individuals deserve fundamentally fair treatment, just as do those we presume innocent. We must forcefully and finally reject "the ancient view that a convicted defendant becomes an outlaw, a person with no legal rights whose property and even identity may be forfeit." [38] So too

bring catastrophe, it is worth noting that both England and Canada and several of our states have long enforced such a requirement and show no signs of turning back from it.

**35.** ABA Project on Minimum Standards for Criminal Justice, *supra* Note 5, at 222.

**36.** The Advisory Committee on the Rules has once again, in 1970, proposed a revision which would make broad disclosure

mandatory. *See* 48 F.R.D. 553, 615–619 (1970).

**37.** Three times—in 1944, 1962 and 1964—the Advisory Committee on the Criminal Rules recommended a revision making disclosure mandatory. However, the recommendations were defeated by substantial pressure from certain sections of the bench and bar. *See* 2 C. Wright, *supra* Note 11.

**38.** Kadish, *supra* Note 15, 75 Harv.L.Rev. at 920.

must we reject the more modern paternalistic assumption that the "guilty" are mere social problems to be solved rather than individuals to be treated fairly. The trend of law and opinion, I believe, is to recognize and protect the rights of criminal convicts, whether in the procedures by which they are sent to and released from prison or in the conditions which they must endure while incarcerated. A guarantee of fairness and accuracy at the sentencing hearing is a good place to begin.

I respectfully dissent.