**UNITED STATES of America,**
**Appellee,**

v.

**Wyche Larry SIZER, Appellant.**

**No. 8326.**

United States Court of Appeals
Fourth Circuit.

Argued June 19, 1961.

Decided July 21, 1961.

Wyche Larry Sizer, pro se.

Hugh E. Monteith, U. S. Atty., Sylva, N. C., for appellee.

Before SOBELOFF, Chief Judge, and HAYNSWORTH and BOREMAN, Circuit Judges.

SOBELOFF, Chief Judge.

This is a narcotic case in which the defendant claims that he was entrapped by agents of the Government into the commission of the offense.

The federal prisoner, Wyche Larry Sizer, who prosecutes this appeal from the District Court's order denying his petition for relief under 28 U.S.C.A. § 2255, was earlier tried and convicted by Judge Warlick, sitting without a jury, on an indictment containing four counts[1] charging illegal sales of narcotics, 26 U.S.C.A. § 4705(a). He was sentenced to five years on count one and five years on count two, these to run consecutively; and he was sentenced to five years on count three and five years on count four, these to run concurrently with the sentences on counts one and two. There was no appeal from this judgment of the District Court.

Sizer's petition alleges that his sentences under counts two, three and four are illegal in that he was entrapped into the commission of these crimes by federal officers. He does not contest his conviction on count one, for he concedes that this sale was made after a voluntary offer of narcotics by him to an informer. As to the subsequent counts, the appellant's contentions are threefold: First, he says that although he originally sought out the federal agents, he made the sale described in count two only after being encouraged by an offer of money from the federal officers. Second, he argues that he should have been arrested after the first sale and should have been given no opportunity to commit the offenses described in counts two, three and four. Third, he insists that he was not the seller in counts three

1. Count one alleged a sale of Cocaine to Agent Patch on March 9, 1959; count two, Dolophin Tablets, on March 16, 1959; count three, Morphine, on March 25, 1959; count four, Demerol, Pantopan and Morphine, on March 27, 1959.

and four since these sales were consummated between Narcotics Agent Patch and one James H. Evans, member of a group stealing narcotics from a hospital in Charlotte, North Carolina, and that he acted only as delivery agent in these transactions, at the request of Agent Patch. (Of course, he did not know the true identity of Patch at the time.)

We find no merit in any of these contentions.

1. The defense of entrapment was approved by the Supreme Court in Sorrells v. United States, 1932, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413. There a federal officer, after persistent requests and persuasions, tempted the reluctant defendant, who had not theretofore engaged in the liquor traffic, into making a sale of liquor for the sole purpose of prosecuting him. The Court, speaking through Chief Justice Hughes, said:

"It is well settled that the fact that officers or employees of the government merely afford opportunities or facilities for the commission of the offense does not defeat the prosecution. Artifice and stratagem may be employed to catch those engaged in criminal enterprises. * * * The appropriate object of this permitted activity, frequently essential to the enforcement of the law, is to reveal the criminal design; to expose the illicit traffic, the prohibited publication, the fraudulent use of the mails, * * * and thus to disclose the would-be violators of the law. A different question is presented when the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its

commission in order that they may prosecute." Id., 287 U.S. at page 441, 53 S.Ct. at page 212.

The Government argued in Sorrells that the court was not at liberty to set aside the conviction, because if an individual intentionally does an act which is forbidden by the law, he breaks the law in the only sense in which the law considers intent, and because the legislature rather than the courts is the final arbiter of public policy. Answering this argument, the court said that Congress did not intend the criminal statutes to apply in circumstances where government agents instigate an offense and lure otherwise innocent persons into its commission. Id., 287 U.S. at page 448, 53 S.Ct. at page 215.[2]

More recently, in Sherman v. United States, 1958, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848, the Supreme Court reaffirmed the Sorrells doctrine, with respect to the elements which are necessary to make out the defense.

"In Sorrells v. United States, * * *, this Court firmly recognized the defense of entrapment in the federal courts. The intervening years have in no way detracted from the principles underlying that decision. The function of law enforcement is the prevention of crime and the apprehension of criminals. Manifestly, that function does not include the manufacturing of crime. Criminal activity is such that stealth and strategy are necessary weapons in the arsenal of the police officer. However, 'A different question is presented when the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition

2. Justices Roberts, Brandeis and Stone in a separate concurring opinion stated their reasons somewhat differently. In their view the defense of entrapment rests on a fundamental rule of public policy. "The protection of its own functions and the preservation of the purity of its own temple belongs only to the court. It is the province of the court and of the court alone to protect itself and the govern-

ment from such prostitution of the criminal law. The violation of the principles of justice by the entrapment of the unwary into crime should be dealt with by the court * * *." 287 U.S. at page 457, 53 S.Ct. at page 218. Compare Casey v. United States, 1928, 276 U.S. 413, 421, 48 S.Ct. 373, 72 L.Ed. 632 (dissent by Brandeis, J.).

to commit the alleged offense and induce its commission in order that they may prosecute.' * * * Then stealth and strategy become as objectionable police methods as the coerced confession and the unlawful search. Congress could not have intended that its statutes were to be enforced by tempting innocent persons into violations." Id. 356 U.S. at page 372, 78 S.Ct. at page 820.[3] See also Masciale v. United States, 1958, 356 U.S. 386, 78 S.Ct. 827, 2 L.Ed.2d 859.

Nothing is more oppressive and shocking to the conscience than a prosecution promoted by agents provocateurs whose victim, innocent of criminal purpose, has been lured and corrupted into a course of crime as a pretext to subject him to penalties. Such vicious official behavior, whether stemming from excessive zeal or otherwise motivated, cannot be condoned and courts should be alert to frustrate it. But it is equally to be remembered that this condemnation is aimed at the seduction of the innocent; it is not designed to impede the effective detection of those already bent on crime and seeking means to perpetrate it. What this record discloses bears no resemblance, even remote, to the disreputable tactics illustrated in Sorrells and Sherman.

██ Clearly, the two decisions of the Supreme Court do not hold that the Government may not use ingenuity and disguise to secure evidence of crime; rather, what is prohibited is government instigation of criminal conduct which would otherwise not occur. Sizer has not contended that he was unwilling to commit the criminal acts underlying counts two, three and four. In no sense did the federal officers induce criminal conduct in which he was not otherwise ready to engage; they merely afforded him the opportunity to sell narcotics after he had made the initial solicitation. While effecting the first sale Sizer told the agent he was in a position to transact further business of the same character. On this undisputed evidence there is no reasonable ground to view the subsequent sales as having originated in the minds of federal officers.

██ 2. Also without merit is the appellant's contention that he should have been arrested immediately upon the first sale and not given the opportunity to make additional sales. The arrest was not unduly delayed, and it was not improper for the officers to see how far Sizer was prepared to go in his illegal conduct, and to discover, as they did, the source of his supply. See Dailey v. United States, 5 Cir., 1958, 261 F.2d 870, certiorari denied, 359 U.S. 969, 79 S.Ct. 881, 3 L.Ed.2d 836.

█ 3. Completely frivolous is Sizer's final contention that he was only "delivering agent" in the sales described in counts three and four. Although he was indicted under 26 U.S.C.A. § 4705(a) for illegally selling narcotics and it was incumbent on the Government to prove a sale,[4] Sizer is not entitled to relief under 28 U.S.C.A. § 2255, if the evidence, contrary to his theory, fairly supports, as we think it does, the judge's finding of a *sale* of narcotics by this defendant. Compare Carter v. United States, 1960, 108 U.S. App.D.C. 405, 283 F.2d 200. There was

---

3. Justice Frankfurter, joined by Justices Douglas, Harlan and Brennan urged in a separate concurring opinion that the Court should re-examine the rationale of the majority in Sorrells and adopt that of the concurring Justices Roberts, Brandeis and Stone, 356 U.S. at page 378, 78 S.Ct. at page 823.

4. In a number of cases the Government has erroneously elected to proceed to trial only under 26 U.S.C.A. § 4705(a), which makes the selling or giving away of narcotics a crime in certain circumstances, where the showing was that the defendant was acting merely as purchaser or purchasing agent rather than as seller. See, e. g., United States v. Sawyer, 3 Cir., 1954, 210 F.2d 169. In cases of this type the Government, to succeed, *may* more appropriately proceed also under 26 U.S.C.A. § 4704(a) which makes both the sale and purchase of narcotics not from the originally stamped package a crime, or 21 U.S.C.A. § 174 which makes criminal both the purchase and sale of narcotics known to be illegally imported.

ample basis for a conclusion by the District Judge from the testimony either that the defendant was himself the seller or that he was knowingly acting for the seller to facilitate these illegal sales.

Affirmed.