UNITED STATES of America, Appellee,

v.

Charles SCHRENZEL, Appellant.

No. 71–1268.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 16, 1971.

Decided June 28, 1972.

Rehearing and Rehearing En Banc Denied July 28, 1972.

Heaney, Circuit Judge, concurred in part and dissented in part and filed opinion.

Irl B. Baris, Leonard J. Frankel, Newmark & Baris, St. Louis, Mo., for appellant.

John A. Newton, Asst. U. S. Atty., Daniel Bartlett, Jr., U. S. Atty., St. Louis, Mo., for appellee.

Before GIBSON and HEANEY, Circuit Judges, and VAN PELT, Senior District Judge.*

VAN PELT, Senior District Judge.

Appellant Charles Schrenzel, a pharmacist, was convicted by a jury on all four counts of an indictment charging him with the illegal sale of stimulant drugs. The four-count indictment charged appellant with violation of 21 U.S.C. § 331(q) (2) in "wilfully, knowingly and unlawfully" selling and delivering in St. Louis County, within the Eastern District of Missouri, a certain number of capsules or tablets of "a stimulant drug within the meaning of Section 321(v) (2), Title 21, United States Code." Each count alleged a different date. Count 1 charged a sale January 26, 1971, of 400 capsules, more or less, of a combination of d– and dl–amphetamine sulphate. Counts 2, 3, and 4 each alleged a sale of methamphetamine hydrochloride on January 18, 16, and 14, 1971 respectively. The January 18th sale was 200 tablets, more or less, while the January 16th and 14th sales were each of 100 tablets, more or less. The defendant was found guilty on each count. Judge Webster sentenced him to a total of ten years.

On this appeal, Schrenzel raises eleven points ranging from a claim that the government failed to make a submissible case to an assertion that the defendant was entitled to a copy of the presentence investigation report. We have examined each contention and find all wanting in merit. We briefly comment on each.

Appellant claims that the government failed to make a submissible case as to the specific allegations of each count of the indictment. Defendant was employed as a pharmacist in the Teich Pharmacy in Bellefontaine Neighbors, Missouri. William Clark, special agent with the Federal Bureau of Narcotics and Dangerous Drugs, testified that he had made each of the four illegal purchases of drugs from the defendant.

Clark's testimony established that he had no prescription for the drugs and that the defendant knew the sales were illegal. This testimony was substantiated by Darrell Ruediger, a police officer from the Narcotics Section of the St. Louis, Missouri police department, who testified that he was with Agent Clark on two of the four dates that sales were made by the defendant. The government also called Ferris Van Sickle, a government chemist, who analyzed all the government's drug exhibits.

Count 1 of the indictment, as above explained, charged the defendant with the unlawful sale of 400 capsules, more or less, containing a combination of d– and dl–amphetamine sulphate. Such a drug is a "depressant or stimulant drug" under 21 U.S.C. § 321(v) (2), which was in effect at the time of the alleged sales but has since been repealed. The government chemist testified that the capsules in the government's Exhibit 4, which relates to Count 1, contained d– and dl–amphetamine, commercially known as Biphetamine, which is a mixture of the optical isomers of amphetamine. The chemist's testimony made no mention of sulphate. Count 1, as above noted, included sulphate in its description of the drug charged. The defendant claims that this is a fatal variance and thus the claim that the government has failed to prove its case on Count 1. We believe the variance was harmless error under Rule 52(a) of the Federal Rules of Criminal Procedure.

Certainly a court cannot permit a defendant to be tried on charges which are not made in the indictment against him. Ex parte Bain, 121 U.S. 1, 13, 7 S.Ct. 781, 30 L.Ed. 849 (1887). However, the "true inquiry . . . is not whether there has been a variance in proof, but whether there has been such a variance as to 'affect the substantial rights' of the accused." Berger v. United States, 295 U.S. 78, 82, 55 S.Ct. 629, 630, 79 L.Ed. 1314 (1935).

---

* Senior District Judge for the District of Nebraska sitting by designation.

■ The applicable definition of a "depressant or stimulant drug," found in 21 U.S.C. § 321(v) (2), states: "The term 'depressant or stimulant drug' means . . . (2) Any drug which contains any quantity of (A) amphetamine or any of its optical isomers; (B) any salt of amphetamine or any salt of an optical isomer of amphetamine; or (C) any substance which the Secretary, after investigation, has found to be, and by regulation designated as, habit forming because of its stimulant effect on the central nervous system . . . ." 79 Stat. 227. The drug in Exhibit 4, as described by the government chemist was included in the statutory definition under subsection (A). In addition, the trial court instructed the jury that a "depressant or stimulant drug" included amphetamine or any of its optical isomers, in addition to *salts* of amphetamine. Because the drug identified by the government chemist at trial was included in the definition of stimulant drugs given in the statute and the trial court's instruction clearly pointed this out to the jury, the failure to include testimony as to whether it was a salt was harmless error.

Appellant makes substantially the same argument with regard to Counts 2, 3, and 4 of the indictment, which charged the unlawful sales of methamphetamine hydrochloride. The government chemist's conclusion was that Exhibits 1, 2, and 3, contained dl–methamphetamine hydrochloride, commercially known as Desoxyn. Appellant contends that the failure to include the "dl–" prefix in the indictment was fatal error.

■ The regulations promulgated to implement subsection (C) of section 321(v) (2), quoted above, state in part:

"The Director has investigated and designates all drugs, unless exempted by regualtions in this part, containing any amount of the following substances as having potential for abuse and habit-forming because of their stimulant effect on the nervous system: d–, dl–, Methamphetamine and their salts." 21 C.F.R. § 320.3(b) (January 1, 1970)

The trial court included the regulation in its instructions to the jury. Thus, the substance described by the government pharmacist as contained in Exhibits 1, 2, and 3 was included under the above regulation as a stimulant drug within the meaning of the statute, and the failure to include the "dl–" prefix was a harmless variance. We point out that even the manufacturer of the drug, Desoxyn, did not include the "dl–" prefix on the label of the drug.

Appellant's reliance on Stirone v. United States, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), is misplaced. In that case the Supreme Court held there was a fatal variance between the indictment and the proof, where the indictment charged interference with the *importation* of sand into Pennsylvania while the evidence showed interference with the *exportation* of steel products from Pennsylvania, in addition to importation of sand into Pennsylvania. The trial judge had instructed the jury that it could base a conviction on interference with *either* importation or exportation. The Supreme Court held that no interference with interstate steel shipments was charged in the indictment and thus the variation between the pleading and the proof was so substantial as to destroy the defendant's right to be tried only on charges presented in the indictment returned by the grand jury.

In Guilbeau v. United States, 288 F. 731 (5th Cir. 1923), the defendant was charged with the sale of morphine sulphate, but the evidence showed the sale of morphine hydrochloride. The Fifth Circuit, in a 2–1 decision, held that the variance was substantial and the conviction could not be sustained.[1] It could be

---

1. It is interesting to note that the same court, in Williams v. United States, 294 F. 682 (5 Cir., 1923), upheld the variance between an indictment which charged the sale of morphine and proof which showed the drug to be a morphine sulphate. In

argued that the *Guilbeau* decision requires a reversal here. However, we believe that *Guilbeau* has been overruled in effect by both Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935)[2] and Rule 52(a) of the Federal Rules of Criminal Procedure. Rule 52 (a) provides: "Any . . . variance which does not affect substantial rights shall be disregarded." In *Berger*, the United States Supreme Court stated:

> "The general rule that allegations and proof must correspond is based upon the obvious requirements (1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at the trial; and (2) that he may be protected against another prosecution for the same offense." 295 U.S. at 82, 55 S.Ct. at 630 (citations omitted).

Thus the rule is that every variance or error does not require reversal. So long as the variance does not affect the substantial rights of the defendant, the variance is immaterial. Gay v. United States, 408 F.2d 923, 928 (8th Cir. 1969), cert. denied, 396 U.S. 823, 90 S. Ct. 65, 24 L.Ed.2d 74 (1969).[3]

The essence of the indictment against Schrenzel was that he "wilfully, knowingly and unlawfully" sold stimulant drugs, as defined by 21 U.S.C. § 321(v) (2). All of the drugs described at trial as sold by the defendant, and identified by the chemist, were stimulant drugs under section 321(v) (2). The variance between the proof and the indictment was not sufficient to "affect the substantial rights" of the defendant. The defendant was not misled, and the conviction in this case will be a bar to any other prosecution for selling the same drugs. We hold that the variance in this case was not material.

The indictment charged four separate sales of drugs by the defendant on four separate days. Defendant argues that the purchases were part of a "continuing transaction," and thus there was only one offense instead of four. These were separate transactions, with the purchaser buying a different quantity of drug on different dates, even though it was the same drug in three instances. "The test to be applied to determine whether there are two offenses or only one is whether each count requires proof of an additional fact which the other does not." Harris v. United States, 237 F.2d 274, 276 (8th Cir. 1956) (citations omitted). This test is adequately met here in that in order to substantiate each count the government was required to show the individual sale on each separate day. There was no continuation of one transaction nor was there a merger of crimes in the four separately negotiated sales. It was possible for the jury to have convicted on the sales witnessed by Officer Ruediger, and acquitted as to the other two.

In its instructions to the jury, the trial court used the phrase "depressant or stimulant drug." The appellant argues that the Comprehensive Drug Abuse and Control Act went into effect on October 27, 1970, approximately three months before the offenses in question here, and that Act used the phrase "depressant or stimulant substance," thus making the trial court's use of the term "drug" erroneous.

---

1924, the Seventh Circuit held directly contrary to *Guilbeau* on basically the same variance. McIntosh v. United States, 1 F.2d 427, 428 (7 Cir., 1924).

2. In Cromer v. United States, 78 U.S.App. D.C. 400, 142 F.2d 697, 698, cert. denied, 322 U.S. 760, 64 S.Ct. 1274, 88 L.Ed. 1588 (1944), Thurman W. Arnold, speaking for the D.C. Court of Appeals, held that the cases, such as *Guilbeau*, which had adopted the more rigid test in defining the rule against variance had been overruled by *Berger*.

3. In Bronstein v. United States, 17 F.2d 12, 14 (8th Cir. 1927), this court held that a charge of an illegal sale of gin, when the proof showed a sale of moonshine whiskey, was not a variance requiring a new trial.

Upon examining both section 321(v) (2) and the new Comprehensive Drug Abuse and Control Act, we are convinced that there was no error in the use of the term "drug" instead of "substance." Both statutes use the terms interchangeably in various contexts, and the court's use of "drug" rather than "substance" was not reversible error.

Appellant also objects to the trial court's use of the terms "Secretary," "Commissioner," and "Attorney General," interchangeably, and says that the "Commissioner" was the person required to list the drugs which were prohibited. As the government points out these changes in terms came about because of the transfer of the administration of dangerous drug enforcement from the Department of Health, Education and Welfare to the Department of Justice. These changes were fully discussed and upheld by this court in United States v. Levin, 443 F.2d 1101, 1104–1106 (8th Cir. 1971), cert. denied, 404 U.S. 944, 92 S.Ct. 297, 30 L.Ed.2d 260 (1971). The appellant's argument raises no new issue on this point.

Appellant also contends that the trial court erred in not giving all of the defendant's "position" instruction to the jury. The trial court did give the first two paragraphs of the requested instruction. The rest of the instruction was a statement on burden of proof. The trial court adequately instructed elsewhere on burden of proof. To give the entire requested instruction would have been repetitive.

Appellant argues that the trial court was in error when it refused to transfer the case to the state court. He claims he had certain rights in the state court, such as the opportunity to take the depositions of law enforcement officers on certain matters which were not available to him in federal court. This argument was expressly rejected by this court in Caton v. United States, 407 F.2d 367, 376 (8th Cir.), cert. denied, 395 U.S. 984, 89 S.Ct. 2149, 23 L.Ed.2d 773 (1969). Appellant has set forth no reason which would persuade us to overrule that decision.

Prior to trial, defendant's attorney, who continues to represent him here, made a motion under Rule 16 of the Federal Rules of Criminal Procedure for discovery and inspection. He demanded the laboratory report on the contents of the drugs to be placed in evidence at the trial. This was furnished him several days prior to trial. Defendant's attorney did not indicate at any time prior to trial that he wished to see the actual drugs or their bottles. On the morning of the trial the chemist who had possession of the drugs brought them into court and the defendant and his attorney were given time (approximately forty-five minutes) to inspect them. Defendant now claims he should have been granted a continuance in order to see the bottles for a longer time and determine, by means of the lot numbers, where the drugs had come from. The granting of a motion for continuance is within the discretion of the trial court. In the absence of a clear abuse of that discretion the trial court will be upheld. United States v. Leach, 429 F.2d 956, 963 (8th Cir. 1970), cert. denied, 402 U.S. 986, 91 S.Ct. 1675, 29 L.Ed.2d 151 (1971). The fact that appellant's counsel was given the laboratory report several days before trial and was allowed to inspect the drugs prior to the trial adequately supports the trial court's denial of the motion for continuance.

Appellant contends he should have been allowed to inspect the grand jury minutes because he believes the indictment was based on hearsay evidence. Defendant's counsel was informed at the hearing on the motion for discovery and inspection that the grand jury minutes had not been recorded. Neither the Constitution nor any statute requires that the minutes of grand jury testimony be recorded or transcribed. United States v. Harflinger, 436 F.2d 928, 935–936 (8th Cir. 1970), cert. denied, 402 U.S. 973, 91 S.Ct. 1660, 29 L.

Ed.2d 137 (1971). The failure to record the grand jury testimony is not grounds for dismissal of the indictment returned. United States v. Franklin, 429 F.2d 274, 276 (8th Cir. 1970), cert. denied, 400 U. S. 967, 91 S.Ct. 380, 27 L.Ed.2d 387 (1970). The trial court properly overruled defendant's motion for inspection of the grand jury minutes.

During the voir dire examination of the jury panel, defense counsel asked whether any of the prospective jurors were related to any law enforcement official. It developed that one juror, Mrs. Alsop, had a son and brother on the police force of Bellefontaine Neighbors, Missouri, where the drugstore in which defendant worked was located. Government counsel acknowledged that the brother, a Sgt. Rogers, had "some connection" with the case against defendant. Defendant's request that Mrs. Alsop be excused for cause was granted over the government's objection.

Upon being informed that she was excused, Mrs. Alsop stated: "I had no idea what case was going to come up. Should I have volunteered that?" T. p. 100. Judge Webster then attempted to reassure Mrs. Alsop that she had done nothing wrong, but in doing so he made the following statement:

"You have done nothing improper. The purpose of the question is to determine any possible interest, and in view of your statement that you have a brother who is on the police department in the city *in which the crime occurred*, we just don't want to have any possibility that in the course of the trial you might be embarrassed, or the defendant prejudiced, in any way by some testimony that might come up that would put you on the spot, so we are just going to relieve you of that." T. p. 100 (emphasis supplied).

Because the court had stated "in the city *in which the crime occurred*," defense counsel immediately moved for a mistrial. The trial court denied the motion, and made the following statements to the jury:

"Ladies and gentlemen of the jury, in excusing Mrs. Alsop the court inadvertently used a poor choice of words in explaining to her the reason that she was being excused. Of course, you understand that the court did not in anyway intend to imply the existence of any guilt on the part of this defendant, or, in fact, to prejudge the question of whether a particular crime occurred at all within this district, and within the City of Bellefontaine Neighbors. This defendant, as Mr. Baris has pointed out to you, is to be presumed innocent until proven guilty by competent evidence to your satisfaction beyond reasonable doubt. I referred only to previous statements by counsel which purported to establish the location of the alleged offense. There has been no evidence that an offense has in fact occurred.

"Is that clear to you?

"The indictment is not evidence of an offense. And the court was merely trying to explain to Mrs. Alsop the reason for her being excused, but I want you to know that I have formed no judgment and I am sure that you have formed no judgment as to the guilt or innocence of this defendant, and that he stands innocent at this moment till such time as he is proved by competent evidence to your satisfaction beyond reasonable doubt that he is guilty of the crime for which he is charged.

"Is there anyone in this panel who was in anyway influenced by what I said in my conversation to Mrs. Alsop, or *who might in anyway be influenced by what I said*?

"(No response from the jury panel.)" T. pp. 101–02

In addition, the trial court gave the following instruction at the conclusion of the case:

"It has been and will be the Court's purpose to express no opinion upon the facts in this case, for that is the sole province of the jury, and if you

have thought at any time during the trial that the Court has indicated any opinion with respect to the facts, you may disregard it, because I have meant nothing by voice or manner to indicate any opinion upon what is or is not a fact in this case, and if at any time during this charge you get the impression that the Court is indicating his own view with respect to the facts, remember that is not at all conclusive upon you. You and you alone shall determine what the facts are in this case." T. pp. 236–37

Appellant contends that the trial court's words relating to "crime" were of such magnitude that no instruction to the jury could overcome the prejudice.

 Statements made · by the trial judge are not cause for reversal unless prejudicial error is apparent. United States v. Leach, *supra*, 429 F.2d at 964, but each record must speak for itself in determining if improper comments by the trial judge were prejudicially erroneous. United States v. Porter, 441 F.2d 1204, 1215 (8th Cir. 1971). Judge Webster recognized that his comment had been improper and made every effort to point out to the jury that the statement was inadvertent and that the jury was to ignore it. The court carefully pointed out that the defendant stood innocent of the charge until the government established sufficient evidence to convict him and that the court was making no judgment as to the guilt or innocence of the accused. We believe that the statement of Judge Webster to the jury, as above set forth, which was made at the time of the incident and the further comment in the charge, were sufficient to remove any effects the statement may have had on the jurors. We believe that there was no "reasonable possibility" that the judge's comment might have contributed to the conviction. *See* United States v. Porter, *supra*, 441 F.2d at 1215–1216.

Appellant contends that the court committed reversible error in limiting the cross-examination of Agent Clark.

Clark testified on direct examination that he went into the defendant's pharmacy on four occasions and purchased drugs from the defendant. On cross-examination he stated that there were other police officers outside the pharmacy on each occasion. Defense counsel then asked him if one of those officers was Richard Flynn of the St. Louis County police force. After an affirmative answer, he was asked: "Is that the same Officer Flynn who was recently suspended?" T. p. 132. The government objected on the grounds that the question had no relevancy to the case on trial, and the court sustained the objection. Appellant claims this was an improper limitation of his right to cross-examination, in that he was attempting to determine whether the suspension of Officer Flynn was connected in any way with the alleged sales by defendant to Agent Clark.

 The government stated it had no intention of calling Officer Flynn to testify. He played no part in the actual buying of the drugs from the defendant and he was only one of several officers in surveillance. The trial court was correct in ruling that the defendant should not be allowed to bring Officer Flynn's suspension into the case on cross-examination of Agent Clark. Officer Flynn was never called to testify and thus his credibility was never put at issue. The trial court's ruling was proper.

As noted earlier, the four separate sales occurred on four separate days. Based upon the first three sales, government agents secured an inspection warrant and this was served immediately after the defendant was arrested. The arrest occurred immediately after the fourth sale. Agent Clark was the arresting officer. Based upon this sequence of events, appellant contends that Agent Clark was not authorized to make the arrest because he had sufficient time to apply for an arrest warrant. It is appellant's position that the standards regarding search warrants must be applied in toto to arrest warrants.

There is no element of a search warrant here since any inspection done by the agents subsequent to the arrest was done pursuant to a valid inspection warrant. In addition, there was ample probable cause for the defendant's arrest, since there had been three previous sales of drugs. The appellant has not indicated how the obtaining of an arrest warrant would have protected his rights any more than they were already protected, nor has he cited any authority for his position.

The reasonableness of police conduct in delaying an arrest in any particular case must be weighed against possible prejudice to the defendant. Wilson v. United States, 409 F.2d 184, 186 (9th Cir. 1969). The defendant was not prejudiced here because of the manner of arrest, inasmuch as there was ample probable cause for the agent's actions. *Cf.* 26 U.S.C. (Int.Rev.Code 1954) § 7607 (1970).

Appellant's argument that the arrest should have taken place before the fourth offense is also without merit. As stated in United States v. Sizer, 292 F.2d 596, 599 (4th Cir. 1961):

"Also without merit is the appellant's contention that he should have been arrested immediately upon the first sale and not given the opportunity to make additional sales. The arrest was not unduly delayed, and it was not improper for the officers to see how far Sizer was prepared to go in his illegal conduct, and to discover, as they did, the source of his supply." (citations omitted)

Because the arrest took place after the last sale was made, there was no need, as contended by appellant, to give the appropriate *Miranda*[4] warnings. In addition, appellant makes no contention that statements were later used against him which had been made without *Miranda* warnings.

Appellant also argues that it was error for the trial court to allow the drug exhibits to be shown to the jury after the defense had rested. The sending of exhibits to the jury in criminal prosecutions is within the trial court's discretion, Dallago v. United States, 138 U.S.App.D.C. 276, 427 F.2d 546, 554 (1969); Shayne v. United States, 255 F.2d 739, 743 (9th Cir.), cert. denied, 358 U.S. 823, 79 S.Ct. 39, 3 L.Ed.2d 64 (1958), and the appellant has not shown that that discretion was abused here.

Appellant's final contention is that he should have been given a copy of the presentence investigation report. This is a matter within the discretion of the trial judge, United States v. MacLeod, 436 F.2d 947, 950 (8th Cir. 1971), cert. denied, 402 U.S. 907, 91 S.Ct. 1378, 28 L.Ed.2d 647 (1971). Appellant has shown no abuse of discretion in this case.

The judgment is affirmed.

HEANEY, Circuit Judge (concurring in part and dissenting in part).

I concur in this decision insofar as it holds that the conviction of the defendant can be sustained. However, I would remand the matter to the trial court because of its failure to disclose to the defendant the substance of a presentence report on him which contained derogatory information.

Although this Court has stated that the decision to permit disclosure of the presentence report is within the discretion of the trial court, we have also recognized that

" * * * the Advisory Committee, in recommending Rule 32(c), did not contemplate an absolute rule of nondisclosure without relevancy to the particular circumstance of a case. In fact the Advisory Committee observed in part:

" 'It is hoped that courts will make increasing use of their discretion to disclose so that defendants generally may be given full opportunity to rebut or

4. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

*explain facts in presentence reports which will be material factors in determining sentences.'* [Emphasis included.] Notes of Advisory Committee on Rules, Fed.R.Crim.P. 32(c) (2) (18 U.S.C.A.Supp. 1970.)

"See United States v. Fischer, 381 F. 2d 509 (2 Cir. 1967)."

United States v. Carden, 428 F.2d 1116, 1118 (8th Cir. 1970).

In *Carden,* we held that it was not an abuse of discretion to deny the defendant's request for his full presentence report where the facts relied upon in sentencing were "fully disclosed to the defendant in such a manner that the defendant had an opportunity to explain away any misapprehension the court may have had." See, United States v. Mims, 440 F.2d 644 (8th Cir. 1971). We also stated in United States v. Carden, *supra,* 428 F.2d at 1118:

"It is always advisable for the trial judge to at least state on the record the various factors he has taken into consideration in rendering his sentence. The court may advise counsel of these factors without necessarily disclosing the sources of the information to him. Such a procedure serves as a checkmate to the danger of misinformation being placed in the hands of the court. Cf. Verdugo v. United States, * * * [402 F.2d 599 (9th Cir. 1968), cert. denied, 402 U.S. 961, 91 S.Ct. 1623, 29 L.Ed.2d 124 (1971)]; Baker v. United States, * * * [388 F.2d 931 (4th Cir. 1968)]. If the defendant's record, as publicly disclosed at the hearing, is incorrectly reported, defendant should have an opportunity to explain any discrepancy. If factual background is erroneous, defendant should have the opportunity to inform the court concerning the alleged misinformation."

At the sentencing proceedings in the present case, the defendant's attorney presented the following statement in mitigation of the sentence:

"MR. BARIS [counsel for the defendant]: Very briefly, your Honor, I would like to call the court's attention to the fact that Mr. Schrenzel is a man 59 years old, a family man, he has three daughters. He is not a well man. I submitted some letters from Mr. Schrenzel's doctor to the probation officer, and I presume that those have been made available to the court, as to the nature of his heart condition.

"THE COURT: Yes.

"MR. BARIS: And other ailments. He has never been in trouble previously. The effect of this conviction, I think almost certainly, your Honor, is that he will lose his license to practice as a pharmacist."

The defendant's attorney also asked for an opportunity to review the presentence report and respond to it. The court denied this request and did not reveal that there was derogatory material in the report.

In view of these facts and to protect the important interests of the defendant which we recognized in *Carden,* as well as to insure that the intention to afford liberal disclosure is implemented, I would find that the trial court abused its discretion in refusing to disclose derogatory material in the presentence report and in failing to give the defendant an opportunity to respond to it.

I also believe, however, that this case presents an appropriate opportunity to fully reexamine our position relating to the disclosure of presentence reports. I would require the trial court, absent extraordinary circumstances, to disclose to the defendant the substance of the presentence report. Such a requirement would more fully protect the defendant's interests by opening up this aspect of sentencing to the scrutiny of the defendant and his attorney. It would aid in avoiding the difficulties faced by trial courts in exercising their presently unstructured discretion, and would assist in reviewing the exercise of this

discretion.[1] Finally, to impose some measure of mandatory disclosure would be substantially in accord with a growing body of judicial and scholarly opinion.[2]

For the above reasons, this case should be remanded to the trial court with instructions to vacate the sentence, to advise the defendant of the substance of the presentence report, to extend to him an opportunity to respond to this material, and thereafter to impose a new sentence.

---

1. See, K. Davis, Discretionary Justice, 133–141 (1969).

2. *E. g.*, United States v. Dockery, 447 F.2d 1178, 1186 (D.C.Cir.), cert. denied, 404 U.S. 950, 92 S.Ct. 299, 30 L.Ed.2d 266 (1971) (dissenting opinion of J. Skelly Wright) ; United States v. Bakewell, 430 F.2d 721, 723 (5th Cir.), cert. denied, 400 U.S. 964, 91 S.Ct. 366, 27 L.Ed.2d 384 (1970) (dissenting opinion of J. Wisdom) ; Verdugo v. United States, 402 F.2d 599, 613 (9th Cir. 1968), cert. denied, 402 U.S. 961, 91 S.Ct. 1623, 29 L.Ed.2d 124 (1971) (separate opinion of J. Browning) ; Baker v. United States, 388 F.2d 931, 934 (4th Cir. 1968) (concurring opinion of J. Winter) ; State v. Kunz, 55 N.J. 128, 259 A.2d 895 (1969) ; ABA Standards, Sentencing Alternatives and Procedures, § 4.4 (Approved Draft, 1968) ; Model Penal Code § 7.07(5) (Proposed Official Draft, 1962) ; The President's Commission on Law Enforcement and Administration of Justice, The Challenge of Crime in a Free Society, 145 (1967) ; The President's Commission on Law Enforcement and Administration of Justice, Task Force Report: The Courts, 20 (1967) ; Guzman, Defendant's Access to Presentence Reports in Federal Criminal Cases, 52 Iowa L.Rev. 161 (1966) ; Lerlich, The Use and Disclosure of Presentence Reports in the United States, 47 F.R.D. 225 (1969) ; Pugh and Carver, Due Process and Sentencing: From Mapp to McGautha, 49 Tex.L.Rev. 25, 37 (1970). See also, Note, Presentence Reports, 58 Geo.L.J. 451 (1970).