UNITED STATES of America, Plaintiff-Appellant,

v.

Stephen M. ISSOD, Defendant-Appellee.

No. 74–1367.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 8, 1974.

Decided Dec. 20, 1974.

Certiorari Denied April 14, 1975.

See 95 S.Ct. 1578.

Ivan Michael Schaeffer, Atty., Crim., Dept. of Justice, Washington, D. C., William J. Mulligan, U. S. Atty., Milwaukee, Wis., for plaintiff-appellant.

William M. Coffey and William Burke, Milwaukee, Wis., for defendant-appellee.

Before MARIS, Senior Circuit Judge,* HASTINGS, Senior Circuit Judge and TONE, Circuit Judge.

TONE, Circuit Judge.

The government appeals from an order of the District Court suppressing evidence.

Defendant Stephen M. Issod was indicted for knowingly and intentionally possessing with intent to distribute approximately 83 kilograms of marijuana in violation of 21 U.S.C. § 841(a)(1). His motion to suppress the marijuana on the ground that it had been seized in violation of his Fourth Amendment rights, supported solely by a stipulation of facts, was granted by the District Court. United States v. Issod, 370 F.Supp. 1110 (E.D.Wis.1974). The following facts appear from the stipulation:

On February 2, 1972 at approximately 5:25 P.M. one Linda Silverstein appeared at the United Airlines Air Freight Terminal at the San Diego International Airport driving a van containing two trunks, weighing a total of 215 pounds. She turned the trunks over to the freight agent, consigning them to herself at an address in Madison, Wisconsin, with a notation to hold for pick up at Milwaukee airport, and received a copy of the freight bill.

Almost an hour later, at 6:20 P.M., the freight agent, according to the stipula-

* Senior Circuit Judge Albert B. Maris of the United States Court of Appeals for the Third Circuit is sitting by designation.

tion, "summoned" Agent C. J. McLaughlin of the California Bureau of Narcotics to the United Freight Terminal. At some point the freight agent opened one of the trunks and discovered what he suspected was marijuana. It is impossible to determine from the stipulation whether this occurred before or after McLaughlin arrived. The stipulation, after relating what the freight agent told McLaughlin about the delivery of the trunks, goes on as follows:

"The air freight agent informed Agent McLaughlin that he was suspicious of Miss Silverstein due to the fact that she was reluctant to give him an address in Madison, Wisconsin, and appeared extremely nervous throughout the whole transaction. The freight agent then [When? After he became suspicious or after informing Agent McLaughlin that he had been suspicious?] opened one of the foot lockers and found that it contained what he believed to be kilo bricks of marihuana. When the agent checked the contents of the foot locker and the trunk, he verified that it did in fact contain 88 kilos of marihuana."

Five kilos of the marijuana were "retained as evidence in San Diego" by McLaughlin. The remaining 83 kilos were "allowed to proceed to Milwaukee," in the trunks after McLaughlin had notified the San Diego and Milwaukee offices of the Federal Bureau of Narcotics and Dangerous Drugs of the shipment.

The trunks [1] were flown by United to Milwaukee the next day and arrived there at about 4:50 P.M. They were unloaded from the airplane and escorted to the United Airlines Freight Terminal by Special Agent Richard L. Ripley of the Federal Bureau of Narcotics and Dangerous Drugs. They remained under continuous surveillance until the events of the following afternoon.

Late the next morning, February 4, a United Airlines agent at the freight terminal received a telephone call from a person whose voice was described by the agent as that of a young male. The caller inquired about the packages addressed to Linda Silverstein, and the agent responded that the packages had arrived. The caller then said that Linda Silverstein would be in the following day to pick them up. When the agent asked for the caller's name, "he stuttered, then replied, 'this is her brother.'"

Shortly after 3:00 P.M. the same day, a BNDD agent observed a man and a woman subsequently identified as defendant and Linda Silverstein drive into a parking lot adjacent to the United Airlines Freight Terminal in a green Pontiac sedan, which they parked. They left the car and proceeded to the freight office, where defendant asked one of the airline employees for directions to the men's room. He then went to the men's room while Linda Silverstein proceeded to arrange to pick up the trunks. She handed the consignee memo for the two trunks to the freight agent, who went to the back of the office and informed BNDD Agent Streicher that "the people for the Silverstein package were there." Agent Streicher, dressed as a United Airlines employee, went to the front counter, handed the delivery invoice to Linda Silverstein, and asked her to sign the delivery receipt copy, which she did. He then asked "what type of vehicle she had and she replied that she and the individual she was with were in a Pontiac sedan." Agent Streicher told her to back the vehicle up to the dock, which she did. Defendant "was waiting to assist in the loading of the packages" at the dock when they arrived. Agent Streicher helped defendant load one of the trunks into the car trunk, and then, with defendant in the rear seat and

---

1. Although the stipulation is unclear on this point, the trunks were apparently placed in two cardboard boxes after they were delivered by Silverstein and before they left San Diego. The first mention of the boxes is in the recital of what Agent McLaughlin told Special Agent Streicher of the Milwaukee Office of the Bureau of Narcotics and Dangerous Drugs in the telephone call notifying him of the shipment of marijuana. From that point on in the stipulation the two items are described as "parcels" or "packages." We assume that the boxes were removed before delivery to Silverstein, but in any event we refer to "trunks" throughout.

Agent Streicher outside the door, they proceeded to load the other trunk into the passenger compartment of the car. While they were thus engaged another BNDD agent and detectives of the Milwaukee Police Department "converged on the vehicle," and defendant and Linda Silverstein were placed under arrest. The agents and the Milwaukee Police Officers seized the two trunks and searched the vehicle and defendant. The present appeal concerns only the two trunks.

The admissibility of the evidence depends upon the validity of both the search in California and the seizure in Wisconsin. For reasons that will appear later, we are unable to determine on the record before us whether the California search was lawful. It is necessary to remand the case for the taking of evidence relating to that search, however, only if the Wisconsin seizure was valid. We accordingly consider the Wisconsin events first.

We assume for that purpose that the California search was not unlawful as to defendant, for if it were otherwise that would be the end of the matter. The information on which the federal agents and state officers acted in Wisconsin would be tainted and the Wisconsin seizure and search would therefore be unlawful. Wong Sun v. United States, 371 U.S. 471, 484–487, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Assuming, however, that defendant was not deprived of Fourth Amendment rights by the California search, the information of the BNDD agents in Wisconsin that the boxes contained contraband was not tainted, and they were entitled to act upon that information.

■ During the 22-hour period the boxes were under the federal agents' surveillance or control in Wisconsin before defendant and his companion arrived to take delivery, the agents could have obtained a warrant to search and seize the boxes. They could not, however, have obtained a warrant to arrest the person who would claim the boxes or to search the vehicle into which the box-

es would be loaded, because they could not satisfy the Fourth Amendment's requirement of an affidavit "particularly describing the place to be searched, and the person . . . to be seized" until those persons arrived to pick up the boxes. See Lowrey v. United States, 161 F.2d 30, 33 (8th Cir. 1947), cert. denied, 331 U.S. 849, 67 S.Ct. 1737, 91 L.Ed. 1858 (1947).

■ Furthermore, the agents were not "obliged to intercept incipient criminality before the participation of others therein [could] be ascertained." United States v. Pryba, 502 F.2d 391, 400 (D.C.Cir. 1974), cert. denied 419 U.S. 1127, 95 S.Ct. 815, 42 L.Ed.2d 828, 1975; United States v. Schrenzel, 462 F.2d 765, 775 (8th Cir. 1972), cert. denied, 409 U.S. 984, 93 S.Ct. 325, 34 L.Ed.2d 248 (1972); United States v. Sizer, 292 F.2d 596, 599 (4th Cir. 1961). They were entitled to allow the delivery to be completed before arresting the consignee and her confederates. See United States v. Johnson, 469 F.2d 973 (5th Cir. 1972); United States v. Canesco, 465 F.2d 383 (5th Cir. 1972); United States v. Quinones-Alvarado, 464 F.2d 12 (5th Cir. 1972). Cf. also Hoffa v. United States, 385 U.S. 293, 310, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966).

The BNDD agents were therefore justified in waiting until defendant, who was not the named consignee and who left Linda Silverstein to present the delivery receipt to the freight agent and to arrange to take delivery of the boxes while he went to the men's room, performed some unequivocal act with respect to the trunks, i. e., loading them into the car, before arresting him. By that time the trunks were in the car, and the search of the car was governed by Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), as applied in United States v. Menke, 468 F.2d 20, 22–24 (3rd Cir. 1972). See United States v. Curwood, 338 F.Supp. 1104, 1114–1115 (D.Mass.1972). Accordingly, the seizure and subsequent search of the boxes in Wisconsin were lawful unless based upon information obtained by an unlawful search in California.

We turn then to the warrantless California search. The freight agent opened one of the trunks in the absence of any probable cause that would have authorized issuance of a warrant. Whether information obtained in that search is usable by the federal government depends upon whether the state narcotics agent participated. Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960). An inspection by a carrier without the participation of state or federal authorities is not a government search. United States v. DeBerry, 487 F.2d 448 (2d Cir. 1973); United States v. Echols, 477 F.2d 37, 39 (8th Cir. 1973), cert. denied, 414 U.S. 825, 94 S.Ct. 128, 38 L.Ed.2d 58 (1973); United States v. Blanton, 479 F.2d 327 (5th Cir. 1973); United States v. Tripp, 468 F.2d 569 (9th Cir. 1972), cert. denied, 410 U.S. 910, 93 S.Ct. 965, 35 L.Ed.2d 272 (1973); Clayton v. United States, 413 F.2d 297, 298 (9th Cir. 1969), cert. denied, 399 U.S. 911, 90 S.Ct. 2204, 26 L.Ed.2d 565 (1970); United States v. Pryba, *supra,* 502 F.2d 391, 397–402.

Unless the government is chargeable with participation in the initial opening of one of the trunks by the freight agent, neither the contents of that trunk nor testimony about what it contained should be suppressed. If the freight agent could lawfully open the trunk, he could also, upon discovering the contraband, lawfully notify law enforcement authorities of his discovery and show it to the state officer. See, e. g., United States v. DeBerry, *supra,* 487 F.2d 448, 450–451; United States v. Tripp, *supra,* 468 F.2d 569, 570; United States v. Pryba, *supra,* 502 F.2d 391, 401–402. The officer's opening of the other trunk without a warrant would not require suppression of the marijuana contained in the first trunk, if it can be identified, or testimony about it by the officer of the freight agent. At most, the marijuana found in the second trunk and testimony about it are subject to suppression.

The only information in the record bearing on whether the freight agent opened the first trunk on his own initiative without any request by the state narcotics agent (United States v. DeBerry, *supra,* 487 F.2d 448) or with sufficient participation by the state agent to make the search chargeable to the government (compare Corngold v. United States, 367 F.2d 1 (9th Cir. 1966) with Gold v. United States, 378 F.2d 588 (9th Cir. 1967)) is the portion of the stipulation quoted above. The District Court inferred that the trunk was opened after the state agent arrived and with his participation, but we have read the stipulation carefully and are unable to reach the same conclusion. We cannot determine whether the state agent participated in the initial search. If he did not, the government is not chargeable with the search. It is therefore necessary to vacate the order and remand the case to the District Court with directions to take evidence to determine the facts surrounding the California search.

The government also argues that defendant does not have standing to challenge the legality of the California search. See Alderman v. United States, 394 U.S. 165, 171–176, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969); Brown v. United States, 411 U.S. 223, 227–230, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973). This issue is raised for the first time in this court. Ordinarily a reviewing court will not reverse a judgment on a ground not raised in the trial court. See Hormel v. Helvering, 312 U.S. 552, 556, 61 S.Ct. 719, 85 L.Ed. 1037 (1941); Wagner v. Retail Credit Co., 338 F.2d 598, 601 (7th Cir. 1941). We need not decide whether the failure to raise the standing issue below should preclude us from considering it now, because we are remanding for another reason, and upon remand the government will be entitled to raise the issue in the District Court. Betts v. Board of Education, 466 F.2d 629, 632 (7th Cir. 1972).

The order suppressing evidence is reversed, and the case is remanded for further proceedings consistent with this opinion. The District Court's consideration of the motion to suppress not being

a trial within the meaning of Circuit Rule 23, further proceedings will be conducted before the same judge.

Reversed and remanded.