UNITED STATES of America, Plaintiff,

v.

Rufus AARON et al., Defendants.

Cr. No. 76–59 N.

United States District Court,
M. D. Alabama, N. D.

May 18, 1976.

D. Broward Segrest and Milton L. Moss, Asst. U. S. Attys., Montgomery, Ala., for the United States.

Donald R. Harrison, Montgomery, Ala., for Aaron.

Elno A. Smith, Jr., Montgomery, Ala., for Lemar.

Richard H. Dorrough, Montgomery, Ala., for Robinson.

## ORDER

VARNER, District Judge.

This cause is now before the Court on motions for reduction of bond and motions to suppress filed herein by all Defendants. Upon consideration of said motions to reduce bond and of arguments made by counsel in open Court, it is

ORDERED by this Court that said motions to reduce bond be, and the same are hereby, denied.

By their motions to suppress, the Defendants are seeking to suppress a quantity of heroin seized by the Montgomery Municipal Airport on or about February 12, 1976. The following factual background was brought out at hearing on said motions held May 7, 1976.

On the night of February 12, 1976, Detective Doug Little of the Selma Police Department, at the airport for the purpose of meeting a Selma police official arriving at the airport, observed Defendants Lamar and Aaron near the exit gate inside the terminal. Detective Little stated that he was familiar with Lamar's reputation of suspected involvement with drugs in and around the Selma area. The actions of Lamar and Aaron aroused his suspicion, and he continued to observe them at the baggage pick-up area and noticed that they departed from the airport without picking up a piece of baggage marked "M. LA-MAR" on the outside. Lamar had left the passenger terminal immediately after the officers saw him. Aaron had remained at the baggage depot until there was only the Lamar bag remaining and the Selma police

officers were the only other customers waiting.

After Aaron and Lamar left the airport, Detective Little placed a call to the Montgomery Police Department, and in response to that call, two Montgomery Police Officers arrived shortly thereafter, at approximately 9:00 PM. After briefing the officers on what he had observed and what he knew about Lamar, Detective Little returned to Selma.

One of the Montgomery Police Officers, Detective Segrest, then went to the Delta Air Line counter and informed the employee on duty that he was a police officer and that he was interested in the unclaimed bag from the recent flight. The employee informed Segrest that he had already picked up the bag and would hold it behind the counter until someone came to claim it. Segrest asked to be notified if anyone came to pick up this piece of baggage. The employee agreed to do so and also asked Segrest to join him for a cup of coffee in the back office (which is the private office of Delta personnel). Segrest accepted the offer and joined the employee in the back office.

With Segrest present and sitting directly across the table, the employee searched the piece of unclaimed baggage at approximately 10:30 PM. In the course of looking through the belongings in the bag, he located a small plastic bag containing the heroin. The Delta employee testified that it is customary procedure to search unclaimed bags for name and address in an effort to locate the owner, and this usually takes place each night after midnight. However, he further stated that such searches are made earlier if time allows. After Segrest looked at the plastic bag and noted that it appeared to contain heroin, he instructed the Delta employee to place it back inside the piece of baggage.

At approximately 12:30 AM, Defendants Aaron and Robinson came to the Delta counter and presented the claim ticket for the bag. The bag was handed to them, and Segrest observed the two as they went into the bathroom in the airport. At that point,

Segrest and another Montgomery police officer went into the bathroom and arrested Aaron and Robinson as they were rummaging through the contents of the bag.

■ It is well settled that the Fourth Amendment was intended to restrain the activities of governmental officers and does not apply to a search made by a private individual. *Burdeau v. McDowell,* 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921). Defendants contend that the officer's presence and approval of the search takes it out of the category of a search by a private individual and, thereby, renders it an illegal warrantless search. Defendants further assert that there was no need to search the bag to ascertain the identity of its owner since Officer Segrest had knowledge that Maurice Lamar was the owner. It should be noted that the officer and the air line employee both testified that the officer neither requested the search nor took any part therein other than to examine the contents of the plastic bag once it was discovered. While the officer suspected illicit cargo and while these suspicions had been conveyed to the air line employee, the employee had a right to and did search the baggage for the purpose of locating the name and address of the owner, and the fact that he discovered illicit cargo does not change the legality of the search.

The Government has referred the Court to a number of cases which hold that an inspection of cargo by an air line employee is considered a search by a private individual as long as the inspection is not so connected with governmental participation so as to constitute a governmental search. See *United States v. Cangiano,* 464 F.2d 320 (2nd Cir. 1972); *United States v. Issod,* 508 F.2d 990 (7th Cir. 1974); *United States v. Pryba,* 163 U.S.App.D.C. 389, 502 F.2d 391 (1974); *United States v. Burton,* 475 F.2d 469 (8th Cir. 1973); *United States v. Echols,* 477 F.2d 37 (8th Cir. 1973); *United States v. Wilkerson,* 478 F.2d 813 (8th Cir. 1973); and *United States v. Blanton,* 479 F.2d 327 (5th Cir. 1973). Obviously, the question becomes what constitutes the type of governmental participation that is needed before the

**178**

Fourth Amendment is activated. In cases such as *Burton, Echols, Wilkerson* and *Blanton,* supra, where the search is made before any governmental officer enters the picture, there is no doubt that the search is one made by a private individual.

In *Gold v. United States,* 378 F.2d 588 (9th Cir. 1967), the Court held that, where agents did not request that the package be opened and were not present when it was opened, the fact that the package was opened after the agents informed the air lines employee that they suspected a mislabeled shipping document did not invalidate the search. Although in the present case an officer was present when the baggage was searched, it should also be noted that it was normal procedure for such an unclaimed bag to be checked for identification. Officer Segrest and the Delta employee both testified that Segrest did not make any request that the bag be opened, and such a search would have been performed with or without Segrest's presence. In the case of *Corngold v. United States,* 367 F.2d 1 (9th Cir. 1967), the Court suppressed evidence where agents asked that air lines employees open certain packages and then physically aided in the opening of some of the packages. The Court held that this was a federal search cast in the form of a carrier inspection. As stated earlier, the officer neither requested nor physically participated in the search other than to examine the substance within the plastic bag. This, along with the fact that the Delta employee was authorized to make the search in the normal course of business, convinces the Court that the search in question was not fraught with such governmental participation so as to be considered a governmental search to which the Fourth Amendment would apply.

The Defendants have relied upon a number of cases [1] to support their position that the evidence should be suppressed. However, no case has been cited wherein evidence was suppressed after a private individual conducted a legal, unrequested search in the presence of a law enforcement official.

Although this Court is somewhat puzzled as to why no attempt was made to obtain a search warrant, it finds that the activity of the agent in this case was not sufficient participation to take the search in question outside the realm of a search conducted by a private individual. Accordingly, it is

ORDERED by this Court that said motions to suppress be, and the same are hereby, denied.

---

1. See *United States v. Mekjian,* 505 F.2d 1320 (5th Cir. 1975), wherein the Court refused to suppress evidence of a physician's records, some of which were obtained surreptitiously by his nurse after the F.B.I. had been in contact with her. See also, *People v. McKinnon,* 7 Cal.3d 899, 103 Cal.Rptr. 897, 500 P.2d 1097, 1106 (1972), in which the Court stated, when police officer "stands silently by" while a private individual conducts an *illegal search,* that individual is considered to be acting as an agent of the police.