STATE of Missouri, Respondent,

v.

James A. TRIVITT, Appellant.

No. 10473.

Missouri Court of Appeals, Springfield District.

June 24, 1977.

John Ashcroft, Atty. Gen., Paul R. Otto, Asst. Atty. Gen., Jefferson City, for respondent.

Charles Buchanan, Public Defender, Joplin, for appellant.

Before BILLINGS, C. J., and STONE and TITUS, JJ.

TITUS, Judge.

Tried under the habitual criminal statute (§ 556.280, V.A.M.S.), a jury found defendant guilty of the unlawful possession of phenmetrazine hydrochloride, a controlled substance listed in Schedule II of § 195.017, V.A.M.S. The court assessed punishment at ten years' imprisonment and defendant appealed.

On the date in question, the night patrolman for Sarcoxie first encountered defendant at a closed Texaco service station, next saw him purchasing gasoline at an opened station and finally accosted defendant to admonish him against driving his station wagon in the nighttime through the city's alleys with the car's headlights extinguished. When defendant drove away from the place of the last encounter, the patrolman followed surreptitiously and saw defendant return to the closed Texaco station. The patrolman testified that upon reaching the station, defendant alighted carrying a "little brown pouch" which he placed in some weeds beneath a service station window. Upon returning to his vehicle, defendant "flickered" its headlights two or three times before driving away. The patrolman retrieved the pouch which contained a quantity of pills. A testing of the pills revealed their ingredients to be phenmetrazine hydrochloride.

Following the state's opening statement during trial, the court called a noon recess until 1 p. m. Court and counsel understood that defendant's appointed lawyer, the public defender, would utilize the recess to visit the area where the pouch was allegedly found by the patrolman and secure a photograph of the site. When the jury returned from the recess, defendant and his lawyer were then absent from the courtroom. In an effort to explain the situation, the court addressed the jury: "I might explain to you that the reason for the delay is that [defendant's lawyer] stated he desired to before he made this opening statement to go to *the scene of this alleged drop*[1] and take a picture which he could bring back and possibly introduce in evidence and he wanted to see the picture before he made his opening statement *because he and his client are bound by what is said in his opening statement,* so we arranged for him to go to Sarcoxie and take a picture during this break, and we understand by the Sheriff that it will probably be ten or fifteen minutes before he is back, so that is the reason for the delay." (Emphasis supplied).

---

1. When used in this fashion, Webster's New Collegiate Dictionary defines the noun "drop", p. 349, as "a place used for the deposit and distribution of stolen or illegal goods."

Defendant says the court erred by telling the jury that his lawyer had gone "to the scene of this alleged drop" because it constituted a comment on the evidence "and specifically a comment suggesting to the jury that the activities at the scene of the crime were part of a 'drug drop' or similar sale or exchange of drugs." Defendant also contends the court erred in remarking that he and his lawyer "are bound by what is said in his opening statement" because "said instruction and comment" (a) is not an MAI–CR instruction, (b) is a misstatement of the law and (c) misled the jury and overemphasized the binding effect of statements by counsel for defendant.

■ Even though voiced erroneously, statements made by the court during trial are not cause for reversal unless the pronouncements constitute apparent prejudicial error. Each case must be considered in toto to determine if improper comments were prejudicially erroneous. *United States v. Schrenzel,* 462 F.2d 765, 774[14] (8th Cir. 1972), cert. denied, 409 U.S. 984, 93 S.Ct. 325, 34 L.Ed.2d 248 (1972). "Whether or not error by reason of the court's comments is so prejudicial as to require a new trial is not resolved by a standard of facile application. . . . [E]rror is not harmless if there is a 'reasonable possibility' that the matter complained of might have contributed to the conviction. . . . 'Errors of the trial court which may be prejudicial in a close criminal case, in the sense of being capable in such a situation of possibly affecting the result, can well be without any such rational possibility in a strong case, and thus not entitle the defendant to a reversal of his conviction. The reviewing court must, of course, be able to say with fair assurance that the errors complained of could not, with natural operation in the total setting and proceedings had, be regarded as having possessed any influencing effect.' " *United States v. Porter,* 441 F.2d 1204, 1215[20] (8th Cir. 1971).

■ Employing these tests, we conclude that there was not sufficient prejudice to require reversal. We see the record as presenting a "strong" case against the de-

fendant and cast our judicial doubt that the complained-of comments, although improperly made, in any manner influenced the outcome. The trial ran for a day and a half and included a trip by the jury from Joplin to Sarcoxie to view the scene where defendant had allegedly stashed the pouch of pills. The instance of the judge's erroneous comment consumed no more than a fleeting half-minute of the trial's duration and the remark was not given in the nature of a charge or direction to the jury but obviously as an impromptu endeavor to explain the reason for the delay. In his opening statement, defendant's counsel uttered nothing which could be construed to have been adverse to the defendant albeit the jury may have considered defendant bound thereby. Also, the extemporaneous explanation came close on the heels of instructions numbered 1 and 2 (MAI–CR 2.01 and 2.02) whereby the jury had been formally charged, inter alia, that "no statement, ruling or remark that the Court may make during the trial is intended to indicate its opinion of what the facts are" and "[t]he opening statements of attorneys are not evidence." Moreover, in his closing argument the prosecutor, in referring to the second element of the charged crime (i. e., that defendant intentionally and knowingly had the controlled substance in his possession and under his control), stated that placing the pouch of pills in the weeds "was not an innocent, incidental maneuver, that is dropping the pouch into the weeds, but a very planned maneuver, I think the flickering _ _ _." When defendant's lawyer objected at this juncture, the objection was sustained and the court directed the jury to "disregard the last remark made by the Prosecutor."

There was error only if the statement of the trial judge so prejudiced the jury as to deprive the defendant of a fair and impartial trial. *State v. Tash,* 528 S.W.2d 775, 782[19] (Mo.App.1975). Based upon our reading of the entire record, and in view of the fact that there is but little, if any, doubt as to the defendant's guilt [*State v. Montgomery,* 223 S.W.2d 463, 469[19] (Mo.

1949)], we must conclude that the complained-of statement did not deprive defendant of a fair and impartial trial and that the jury was not influenced by the comment of the court in such a way as to alter its verdict.

Judgment affirmed.

All concur.